1

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

3

4

5

6

7

8

9

WENDY A MAKI,
                                Plaintiff,

        v.

BREMERTON SCHOOL DISTRICT,
LINDA SULLIVAN-DUDZIC, and her
marital community, SUSAN K. STONE,
and her marital community,
                                Defendants.

CASE NO. C19-5901 RJB

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

10

11

12

        This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment

(Dkt. 52) and Defendants Motion for Partial Summary Judgment (Dkt. 55).  The Court has

considered the pleadings filed in support of and in opposition to the motions and the file herein.

13

### I.    FACTS

14

15

16

17

18

        Plaintiff, Wendy Maki, is a special education teacher who worked at Kitsap Lake

Elementary school.  Dkt. 6.  Plaintiff claims that Defendant Susan Stone, the school principal,

locked her in a classroom for hours with a student who will be referred to as "GC" and who was

known to be violent.  Dkt. 6 at 38.  Defendants "vigorously dispute" these allegations, primarily

by arguing that Plaintiff could have escaped but did not call for help.  Dkts. 55 and 63.

19

20

21

22

23

24

        GC had a history both of violent outbursts and of trying to run away from the school.  *Id.*

On September 25, 2017, Defendants Sullivan-Dudzic and Stone met and discussed using a piece

of firehose, which was procured as part of a lockdown procedure should there be an active

shooter, to contain GC in a classroom should this behavior persist.  Dkt. 52 at 2–3.  In addition,

the school district had a policy, Policy 3247, on "Use of Restraint and Isolation."  *Id.* at 7.  On

September 26, 2017, GC had an outburst and Defendant Stone placed the firehose on the door

hinge of a classroom to keep him inside. Dkt. 53-2 at 2 (Stone Declaration). Plaintiff entered

the classroom through a second door, which led to a kitchen, that locked automatically on the

classroom side. Dkt. 52 at 3. The door to the hall appears to have been left slightly open and, at

some point in the late morning, GC got his hand stuck in that opening and needed help. *Id.* The

school nurse came to examine him, left, and then Defendant Stone reapplied the firehose lock.

*Id.* Plaintiff alleges, "[t]his is the moment that Plaintiff's confinement began." Dkt. 52.

Defendant Stone appears to have watched Plaintiff and GC in the classroom through the door for

some time but eventually left. Dkts. 52 and 55.

Policy 3247 regulates restraint and isolation of a student. It reads, in relevant part:

> . . . District staff may use restraint or isolation to discourage undesirable behaviors
> by special education students only in conjunction with an aversive intervention
> plan, or to control unpredicted spontaneous behavior that poses a clear and present
> danger of serious harm to the student, to another person, to property, or of
> disrupting the educational process.

Dkt. 52 at 5. Plaintiff argues this policy is unconstitutional because it allows restraint to

discourage undesirable behavior, when there is a "clear and present" danger of serious harm, as

opposed to "imminent danger," and when there is danger of disruption the educational process.

Dkt. 52 at 7. Plaintiff alleges that the school district should have changed its policy in

conjunction with changes the Washington State Legislature made to the RCW and WAC. *Id.* at

6.

Defendants argue that Plaintiff had multiple means of escape, and, therefore, was never

actually confined. Dkt. 55. They argue that she should have had her keys to the kitchen door,

that Defendants neither knew, nor should have known that she didn't have her keys, and that

Plaintiff could have easily yelled or radioed for help. Dkts. 55 and 66.

## II.   PENDING MOTIONS

Plaintiff brings multiple claims in her complaint.  At issue in these motions for summary judgment are negligence, multiple claims under 42 U.S.C. § 1983 against both Defendants Sullivan-Dudzic and Stone and against the Bremerton School District, and false imprisonment. Dkts. 52 and 55.

Plaintiff filed her motion for partial summary judgment first (Dkt. 52), to which the Defendants responded (Dkt. 66), and Plaintiff replied (Dkt. 68).  Plaintiff requests summary judgment as to the existence of duty in her claim of negligence, specific elements of her 42 U.S.C. § 1983 claim, and on a variety of affirmative defenses.  Dkt. 52.  Through the response and reply, the remaining contested issues appear to be whether: (1) Defendants Sullivan-Dudzic and Stone are entitled to qualified immunity; (2) Defendants may argue that Defendants did not proximately cause Plaintiff's alleged injury; and (3) Defendants may argue that Plaintiff contributed to her own alleged injury.  Dkts. 52, 66, and 68.

Defendants move for summary judgment dismissal of Plaintiff's claims under 42 U.S.C. § 1983 and the state law claim of false imprisonment.  Dkt. 55 at 2.  Plaintiff responded (Dkt. 63), and Defendants replied (Dkt. 71).

## III.   <u>DISCUSSION</u>

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the

1   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

2   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

3   for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

4   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

5   metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is

6   sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

7   the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986);

8   *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

9   **B.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

10      **1. NEGLIGENCE**

11          a.  <u>The Existence of a Duty</u>

12      Plaintiff asserts in her complaint that "Defendants breached their duty of care toward

13   plaintiff" (Dkt. 6) and requests summary judgment as to the existence of such a duty in her

14   motion for partial summary judgment (Dkt. 52).

15      While Defendants concede "that the District owed Plaintiff a duty of care," Defendants

16   "oppose Plaintiff's motion to the extent it asks for summary judgment on the duty element of her

17   negligence claim against Defendant Stone and Defendant Sullivan-Dudzic."  Dkt. 66 at 3 – 4.

18   Plaintiff replies that "Defendants concede that they owed a duty of care to Plaintiff" but does not

19   offer an explanation either in her underlying motion or in her reply why Defendant Stone or

20   Sullivan-Dudzic owed Plaintiff a duty of care to Plaintiff in their individual capacities.  *See* Dkts.

21   52 and 68.

22      Plaintiff's failure to explain why a duty existed between Plaintiff and either Defendant

23   Stone or Sullivan-Dudzic makes summary judgment inappropriate at this time.  To the extent

24

that Plaintiff was making such a motion, it should be denied.

        b.  <u>Jury Instruction</u>

Plaintiff requests summary judgment declaring that "a jury instruction regarding an illegal policy should be given [to the jury] . . . ." Dkt. 52 at 11.  Both Parties acknowledge that the Court need not decide jury instructions at summary judgment.  Dkts. 66 and 68 at 2.  The Court declines to decide this issue at this time.

**2.  42 U.S.C. § 1983 ELEMENTS**

Plaintiff's motion for summary judgment on elements of her § 1983 should be denied because there are genuine issues of material fact.

To state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position.  *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).  Instead, a municipality must be directly responsible for Plaintiff's injury.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Plaintiff moves for summary judgment on the questions of whether (1) the Defendants acted under the color of state law, (2) Defendant Sullivan-Dudzic directed Plaintiff's alleged confinement, (3) Plaintiff's alleged confinement was pursuant to an official policy, and (4) Defendant Sullivan-Dudzic ratified Defendant Stone's actions.  Defendants concede the first question, that they acted under the color of state law, but they dispute the remaining questions.

1  Dkt. 66 at 2.  Genuine issues of material fact preclude summary judgment of the remaining

2  questions.

3      As to the second question, although a supervisory defendant may not be held liable under

4  a theory of *respondeat superior*, she may be held liable "if there exists either (1) his or her

5  personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

6  between the supervisor's wrongful conduct and the constitutional violation."  *Hansen v. Black*,

7  885 F.2d 642, 646 (9th Cir. 1989).  Under the second theory of causation, "[t]he requisite causal

8  connection can be established by setting in motion a series of acts by others, or by knowingly

9  refusing to terminate a series of acts by others, which the supervisor knew or reasonably should

10  have known would cause others to inflict a constitutional injury."  *Starr v. Baca*, 652 F.3d 1202,

11  1207–08 (9th Cir. 2011) (internal citations omitted).

12      Whether the conversations between Defendant Sullivan-Dudzic and Defendant Stone

13  about use of the firehose to detain GC in a classroom set actions in motion that Defendant

14  Sullivan-Dudzic should have known would cause Plaintiff's alleged Constitutional injury is a

15  question of fact.

16      Third, the Bremerton School District may be liable under § 1983 if its policy, practice, or

17  custom was the moving force behind a constitutional violation.  *Monell*, 436 U.S. at 694.  To

18  prevail, Plaintiff must prove that that the municipality had a policy, that this policy amounts to

19  deliberate indifference to the plaintiff's constitutional right, and that the policy is the moving

20  force behind the constitutional violation.  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th

21  Cir. 2011) (internal quotation omitted).

22      Plaintiff seeks summary judgment on all elements except whether there was an

23  underlying constitutional deprivation.  Dkt. 52.  The elements of deliberate indifference and

24

1    causation contain genuine questions of material fact.  Plaintiff argues that Bremerton School

2    District Policy 3247, which describes when restraint may be used against a student, was

3    deliberately indifferent to Plaintiff's constitutional right because the Washington legislature

4    changed the circumstances under which restraint is allowed, but the school district did not

5    change its policy accordingly.  Dkt. 52 at 13–14.  Resolution of whether the policy was

6    unconstitutional and whether failing to update it amounts to deliberate difference depends on

7    questions of fact.  Similarly, it is for the trier of fact to decide whether the policy was the moving

8    force behind a constitutional violation.

9          Finally, Plaintiff seeks summary judgment on the issue of ratification.  To establish

10   ratification, Plaintiff must show that that Defendant Sullivan-Dudzic (1) was a final policymaker

11   and (2) she ratified an unconstitutional action and the basis for it.  *See Gillette v. Delmore*, 979

12   F.2d 1342, 1346–47 (9th Cir. 1992).

13         Defendants do not dispute that Defendant Sullivan-Dudzic was a final policy maker.  *See*

14   Dkt 66 at 12–14.  Whether Defendant Sullivan-Dudzic ratified Defendant Stone's actions,

15   however, contains questions of material fact.

16         A policymaker's "knowledge of an unconstitutional act does not, by itself, constitute

17   ratification."  *Christie*, 176 F.3d at 1239.  Rather, ratification requires that the policymaker make

18   a "conscious, affirmative choice" to approve their subordinate's action.  *Gillette*, 979 F.2d at

19   1347.  Neither mere knowledge of, nor refusal to discipline a subordinate's unconstitutional act

20   suffices to show ratification.  *Christie*, 176 F.3d at 1239.  "Ordinarily, ratification is a question

21   for the jury."  *Id.* at 1240.

22         Although Defendant Sullivan-Dudzic admits that she knew Plaintiff was in classroom

23   with GC, it is unclear whether she knew that Plaintiff was locked inside.  It is for the trier of fact

24

1  to determine whether her knowledge rose to the level of conscious, affirmative approval of an

2  unconstitutional deprivation of liberty.

3       Plaintiff's motion for summary judgment on the elements of her § 1983 claim should be

4  denied.

5  **3.   AFFIRMATIVE DEFENSES**

6       **a.   QUALIFIED IMMUNITY**

7       "Qualified immunity is 'an *immunity from suit* rather than a mere defense to liability.'"

8  *Conner v. Heiman*, 672 F.3d 1126, 1130 (9th Cir. 2012) (quoting *Mitchell v. Forsyth*, 472 U.S.

9  511, 530 (1985).  Defendants in a § 1983 action are entitled to qualified immunity unless their

10 conduct violates clearly established statutory or constitutional rights of which a reasonable

11 person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.

12 Fitzgerald*, 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the Court

13 must determine: (1) whether a constitutional right would have been violated on the facts alleged,

14 taken in the light most favorable to the party asserting the injury; and (2) whether the right was

15 clearly established when viewed in the specific context of the case.  *Saucier v. Katz*, 533 U.S.

16 194, 194 (2001).  "The relevant dispositive inquiry in determining whether a right is clearly

17 established is whether it would be clear to a reasonable officer that his conduct was unlawful in

18 the situation he confronted." *Id*.  at 194–95.

19      "[A] district court should decide the issue of qualified immunity as a matter of law when

20 'the material, historical facts are not in dispute, and the only disputes involve what inferences

21 may properly be drawn from those historical facts.'"  *Conner*, 672 F.3d at 1131 (agents who

22 could have reasonably believed they had probable cause to effectuate an arrest were entitled to

23 qualified immunity).

24

1   Issues of fact preclude summary judgment on qualified immunity.  Plaintiff argues that

2   Defendants locked her in a room with a student who is known to be violent, which violates

3   clearly established Fourth and/or Fourteenth Amendment precedent.  Dkt. 52.  Defendants

4   dispute these facts but do not show that qualified immunity applies to them.  Dkts. 55 and 66.

5   While it is Plaintiff's eventual burden to show that a reasonable school official would have

6   known their conduct was unlawful, it is for a trier of fact to determine whether unconstitutional

7   conduct occurred.

8   Both Plaintiff and Defendants' motions for summary judgment on the issue of qualified

9   immunity should be denied.

10   **b.  OTHER DEFENSES**

11   Defendants withdrew some of the affirmative defenses.  Dkt. 66 at 14–16.  Defendants

12   may, however, argue the issues of proximate cause and contributory fault at trial.  Plaintiff's

13   motion for summary judgment on these issues should be denied.

14   **C.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

15   **1.  SECTION 1983 CLAIMS**

16   Defendants move for summary judgment dismissal of Plaintiff's § 1983 claims.

17   Defendants argue that Plaintiff cannot establish an underlying constitutional violation, and,

18   therefore, her constitutional claims should be dismissed.

19   First, Defendants argue that Plaintiff failed to specifically plead a Fourth Amendment

20   violation in her complaint and should not be allowed to make such a claim at this stage.  While

21   Plaintiff's complaint alleges only that Defendants deprived her of her "right to liberty" (Dkt. 6 at

22   38–39), Plaintiff specifically references the Fourth Amendment in her motion for partial

23   summary judgment (Dkt. 52 at 13) and her response to Defendants' motion for summary

24

1    judgment (Dkt. 63).  Furthermore, Plaintiff's complaint includes enough facts related to a

2    "seizure" so as to not completely deprive Defendant notice of a Fourth Amendment claim.  *See*

3    Dkt. 6.  Defendants have had both notice and the opportunity to respond to this claim.

4           Similarly, Defendants' motion summary judgment on both Plaintiff's Fourth Amendment

5    and Fourteenth Amendment claims should be denied.  The Fourth Amendment, "by virtue of the

6    Fourteenth Amendment, prohibits unreasonable searches and seizures by state officers."  *New*

7    *Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985) (internal quotation omitted).  "[A] person has been

8    'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances

9    surrounding the incident, a reasonable person would have believed that he was not free to leave."

10   *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  "Whether an individual is in custody is

11   determined by an objective standard – whether the individual reasonably believed he or she was free

12   to go."  *United States v. Melvin*, 91 F.3d 1218, 1222 (9th Cir. 1996).

13          Whether a reasonable person in Plaintiff's position would have felt free to go depends on

14   issues of material fact for the trier of fact to decide.  Defendant argues about things Plaintiff could

15   and should have done to leave.  However, considering the evidence in the light most favorable to the

16   Plaintiff, Plaintiff was trapped.  Defendants' motion for summary judgment on the question of an

17   underlying Fourth Amendment violation should be denied.

18          As for Plaintiff's Fourteenth Amendment claim, she must show "the alleged conduct

19   must 'shock the conscience' and 'offend the community's sense of fair play and decency.'"

20   *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (quoting *Rochin v. California*,

21   342 U.S. 165, 172–73 (1952)).  In the Ninth Circuit, the question of whether conduct "shocks the

22   conscience" may be decided by the judge, as a matter of law, or by the jury, as a question of fact.

23   *Roberts v. Bell*, 281 F. Supp. 3d 1074, 1080 (D. Mont. 2018), *collecting cases and comparing*

24   *Marsh*, 680 F.3d at 1155, *with A.D. v. Cal. Highway Patrol*, 712 F.3d 446 (9th Cir. 2013).

1    Although there is no "calibrated yard stick" to determine "what is conscience shocking," *Cnty. of*

2    *Sacramento v. Lewis*, 523 U.S. 883, 847 (1998), the test is objective and "applied to the

3    circumstances of the particular case," *Roberts*, 281 F. Supp. 3d at 1078 (citing *Lewis*, 523 U.S. at

4    849 (Kennedy, J., concurring)).

5            Taken in the light most favorable to the Plaintiff, Plaintiff was locked in a room for hours

6    without means to escape with a student who was known to be violent, which is arguably quite

7    shocking.  Resolution of this claim depends on what happened that day, to be determined by the

8    jury.  Defendants' motion for summary judgment on the question of an underlying Fourteenth

9    Amendment violation should be denied.

10           Finally, Defendants specifically move for summary judgment on Plaintiff's failure-to-

11   train claim, which should be granted.

12           To allege §1983 municipal liability based on a failure to train, Plaintiff must claim that:

13   (1) the existing training is inadequate in relation to the tasks the officials must perform; (2) the

14   failure to train amounts to deliberate indifference to the rights of persons with whom the officials

15   come into contact; and (3) the inadequacy of the training actually caused the deprivation of the

16   alleged constitutional right.  *Merritt v. Cty of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).

17   "Under this standard, [Plaintiff] must allege facts to show that the [Defendant] disregarded the

18   known or obvious consequences that a particular omission in their training would cause

19   [municipal] employees to violate citizens' constitutional rights."  *Flores v. Cty. of Los Angeles*,

20   758 F.3d 1154, 1159 (9th Cir. 2014).

21           To prevail on a failure-to-train claim, a Plaintiff must "establish that the 'policy-of-

22   inaction was the functional equivalent of a decision by the [municipality] itself to violate the

23   Constitution.'"  *Connick v. Thompson*, 563 U.S. 51, 72 (2011) (quoting *City of Canton, Ohio v.*

24

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 11

*Harris*, 489 U.S. 378, 395 (1989)).  To do so, a Plaintiff must generally demonstrate a pattern of similar constitutional violations that put the municipality on notice of the need for training.  *Id.*

Plaintiff asserts that her failure-to-train claim should survive because "Plaintiff has sufficiently shown that Plaintiff was unreasonable seized in violation of her Fourth Amendment rights, so Defendants [sic] argument fails again."  Dkt. 66 at 16.  Plaintiff, however, neither shows a pattern of similar constitutional violations, nor facts that demonstrate the need for additional training related to these particular circumstances was so obvious that the school district was deliberately indifferent to its need.  Defendants' motion for summary judgment on the claim of failure-to-train should be granted.

## 2.  FALSE IMPRISONMENT

Defendants' motion for summary judgment dismissal of Plaintiff's false imprisonment should be denied because genuine issues of material fact remain.

"The gist of an action for false arrest or false imprisonment is the unlawful violation of a person's right of personal liberty or the restraint of that person without legal authority: A person who is restrained or imprisoned when he is deprived of either liberty of movement or freedom to remain in the place of his lawful choice; and such restraint or imprisonment may be accomplished by physical force alone, or by threat of force, or by conduct reasonably implying that force will be used."  *Bender v. Seattle*, 99 Wash.2d 582, 591 (1983) (quoting *Kilcup v. McManus*, 64 Wash. 2d 771 (1964)).

Defendants argue that "there are insufficient facts to support [Plaintiff's] false imprisonment claim."  Dkt. 55 at 15.  Defendants cite an excerpt from a law enforcement investigation, which investigated but declined to bring criminal charges against the school and found "evidence indicates [Plaintiff] clearly knows she wasn't locked in room 112 against her

will and her allegation may qualify as a false report of a crime." *Id*. This assessment, however, is not determinative. The Parties agree that Plaintiff was in the locked room for hours. Whether Plaintiff could have left is a question of fact. Because causation remains undetermined, Defendants' motion for summary judgment on the issue of false imprisonment (Dkt. 55) should be denied.

## IV.    ORDER

Therefore, it is hereby **ORDERED** that:

- Plaintiff's Motion for Partial Summary Judgment (Dkt. 52) is **DENIED**; and

- Defendant's Motion for Partial Summary Judgment (Dkt. 55) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 1st day of December, 2020.

ROBERT J. BRYAN
United States District Judge

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 13