THE HONORABLE ROBERT J. BRYAN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WENDY A. MAKI,

                Plaintiff,

vs.

BREMERTON SCHOOL DISTRICT, SUSAN K. STONE, and her marital community

                Defendants.

CASE NO.:  3:19-cv-05901-RJB

PLAINTIFF'S TRIAL BRIEF

## I.    INTRODUCTION

Until Defendants' wrongful acts, Plaintiff Wendy Maki was a special education teacher at Kitsap Lake Elementary ("KLE") in the Bremerton School District. Mrs. Maki's claims against BSD are retaliation in violation of the Washington Law Against Discrimination, negligence, and ratification of Defendant Susan Stone's § 1983 violation. Mrs. Maki's § 1983 claim against then-KLE Principal Susan Stone is for a state-created created danger.

When a teacher raises reasonable concerns about sexual grooming of her young students, a school district may not retaliate against her. When a supervisor knows an individual is violent and likely to attack and injure an employee, the supervisor must not order the employee to work with that individual alone or unsupervised, especially when the employee

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

repeatedly objects it is unsafe. BSD and Principal Stone violated these principles. The jury will find BSD and Principal Stone liable.

This trial brief outlines several issues that Mrs. Maki anticipates may arise during the case: (1) the importance of appropriately conforming the model instructions to fit this case's unique facts; (2) previewing why Ms. Stone violated a clearly established constitutional right; (3) requesting the Court allow Mrs. Maki to ask leading questions of certain adverse witnesses she is calling and bar Defendants from asking those witnesses leading questions; (4) issuing an adverse inference instruction for BSD allegedly deleting material security footage; and (5) taking judicial notice of Washington's retention requirements for public entities like BSD.

## II.   ANTICIPATED FACTS AT TRIAL

The following outline of the case is provided to aid the Court in anticipating the legal and evidentiary issues anticipated by Mrs. Maki during trial.

### A.   Wendy Maki joins Bremerton School District as a Special Education Teacher.

Before becoming a teacher, Mrs. Maki worked as a pastor and foster care parent, where she led a life of service focused on helping others – especially children and mothers. This calling led Mrs. Maki to become a schoolteacher, where she could focus on working with children with special needs. She went back to school. And she accepted a fulltime role as a teacher for severely cognitively disabled students at KLE.

### B.   Mrs. Maki Observes Paraeducator LaLanne Engaging in Repeated Boundary Violations that She Reasonably Believes May be Sexual Grooming.

When Mrs. Maki joined KLE in August 2016, other educators warned her that a pareducator assigned to her classroom was "touchy feely" and needed to be "watched." The school culture had long tolerated the misconduct of paraeducator Tammy LaLanne despite her repeatedly violating policies requiring adults to maintain professional boundaries. Mrs. Maki and others observed LaLanne touching children in ways not permitted under school policy.

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

More than once, Mrs. Maki caught the paraeducator secretly lying down alone with students in a dark, enclosed closet, including one occasion where Ms. LaLanne was "rubbing" that student. Ms. LaLanne also encouraged a student's "self-stimulation" in a closet at school. Mrs. Maki noticed that certain male students assigned to LaLanne displayed over-sexualized behavior, including grabbing the paraeducator's nipples. On two other occasions, the paraeducator posted pictures of an apparently naked, sleeping child(ren) online:

 

BSD trains its teachers to detect and report physical and emotional boundary violations because preventing boundary violations is one of the most effective ways to prevent teacher-student sexual misconduct. Based on her training, and her experience working as a pastor and foster parent, Mrs. Maki recognized LaLanne's boundary violations as indicators of sexual grooming. She knew that many boundary violations are well-intentioned. But that where educators don't enforce boundary rules, abusers may use the opportunity to cross the line from mentor to sexual misconduct. Mrs. Maki's training taught her that preventing abuse requires teachers to vigilantly report any concerns, because an educator may only have part of the picture. And while paraeducator LaLanne's conduct would be concerning when directed towards *any* student, Mrs. Maki knew she had to be hypervigilant because her severely cognitively disabled students epitomize vulnerability.

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

3

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

### C. Principal Stone Mismanages Maki's Repeated Reports of Boundary Violations.

Throughout 2016, Mrs. Maki repeatedly raised concerns about Ms. LaLanne's conduct to KLE Principal Susan Stone. But Ms. Stone mismanaged Mrs. Maki's reports. Rather than inform the District Administration about the troubling conduct, investigate the conduct, and ensure paraeducator LaLanne ceased her behavior; Defendant Stone failed to take any meaningful action. Instead, she sent this text to Mrs. Maki in or before October 2016 about paraeducator LaLanne "cozying" with a student in the "dark":

Sadly I cannot get the image of a staff person cozying up to a student in a dark area out if my mind.
Yuk!

### D. After Mrs. Maki Escalates Concerns to the District Administration, BSD Reprimands LaLanne. Maki Informs the District of Stone's Mismanagement.

In February 2017, Mrs. Maki again caught paraeducator LaLanne lying with a student in a dark closet. She took this concern directly to another BSD administration official, Kimberly Shipp. BSD investigated and issued LaLanne a reprimand for "repeated . . . physical boundary violations." During the investigation, District Administrators learned from Mrs. Maki that LaLanne's conduct was not new and that she had repeatedly requested Ms. Stone take action. District Administrators Garth Steedman and Denise Kennedy questioned Stone regarding her inadequate responses to Mrs. Maki's report.

BSD did not notify the children's parents. It never did.

### E. Ms. LaLanne's Conduct Continues – and Mrs. Maki Continues Reporting it.

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

After LaLanne returned to Mrs. Maki's classroom, she continued to touch the children inappropriately. In April 2017, Mrs. Maki reported Ms. LaLanne for toileting a second-grade student, even though the student was fully capable of toileting himself. In May 2017, BSD suspended Ms. LaLanne for three days after she used an inappropriate restraint, noting her "conduct continues to be inappropriate." LaLanne ignored her suspension and waited outside the kindergarten playground to speak with a student. Mrs. Maki reported this conduct as well.

BSD allowed paraeducator LaLanne to continue working with the students and Mrs. Maki, despite LaLanne's increasing defiance. BSD still told the parents nothing.

## F.    Principal Stone's Ongoing Retaliation against Mrs. Maki.

Upset by the District's increasing scrutiny and fearful for her job, Principal Stone began to retaliate against Mrs. Maki for her continued reporting on LaLanne. By way of illustration only, Ms. Stone began to withdraw her support and become increasingly standoffish. Defendant Stone also became openly hostile toward Mrs. Maki, allowed paraeducator LaLanne to blatantly retaliate against Mrs. Maki without consequence, and refused to provide her with the tools necessary to a safe classroom, including legally required 1:1 paraeducator support.

## G.    Despite the Obvious Risk, Principal Stone Orders Mrs. Maki to Isolate Alone in a Room with a Dangerous Student and then Abandons Her.

Principal Stone's ongoing retaliation against Mrs. Maki culminated in September 2017. Starting September 26, 2017, and continuing for three days, she ordered Mrs. Maki to isolate herself alone in a room with a student who was uncontrollably and unpredictably violent. Mrs. Maki knew this was unsafe. Mrs. Maki begged Stone not to require this. She cited her fears of the student's outbursts and the need for a 1:1 paraeducator.

Documents and witness testimony will show that Principal Stone ignored Mrs. Maki's pleas even though she knew that the student – called by the acronym "GC" to protect student privacy -- was uncontrollably violent towards educators. He had repeatedly injured other

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

5

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

teachers. For example, GC's former 1:1 paraeducator Bonnie Myers will testify that GC attacked her and gave her a concussion in the Spring of 2017. Additionally, GC injured Mrs. Maki and sent her to Urgent Care on September 6, 2017.

Days before ordering Mrs. Maki to isolate, Ms. Stone received written communications advising her it was unsafe to barricade GC in a room. Despite knowing barricading him would cause GC to escalate, Principal Stone placed a firehose device over the classroom door hinge, locking it from the outside, while Mrs. Maki was alone with GC on September 26. Mrs. Maki could not escape through the other exit, a door to a small kitchen, because that door was locked for safety reasons. She begged Principal Stone to stop using the device while she was in the room. But Principal Stone continued using it, even after she admitted to another employee that it was "unsafe." Ms. Stone was required to supervise Mrs. Maki's safety, but video footage shows her walking away from the room while Mrs. Maki and GC are inside. She abandoned Mrs. Maki repeatedly throughout the day. And no one was there to help Mrs. Maki when GC attacked her.

For the next two days, Mrs. Maki reiterated her well-founded concern that Stone's directive to isolate alone with GC was unsafe. But although Principal Stone knew Mrs. Maki was extremely upset, she ordered her to continue isolating alone in the room with GC. District Administrator Linda Sullivan-Dudzic approved of the plan to isolate Mrs. Maki with GC despite the ever-present danger. Witness testimony and documents show that when GC and Mrs. Maki were isolated together, Principal Stone frequently left Mrs. Maki unsupervised.

GC injured Mrs. Maki, including sending her to Urgent Care on September 28, 2021. But more traumatizing than the physical injuries, were the hours left alone, isolated, abandoned, and ignored under constant threat of violence by the disabled student.

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

**H.  BSD's Actions Caused Mrs. Maki Tremendous Suffering. She is Improving, but May be Permanently Harmed.**

BSD's actions caused Mrs. Maki to suffer from debilitating psychological injuries. Decades ago, she lost a child in a tragedy. But she overcame the pain of that loss and forged ahead, fueling her work to help children so that her daughter's memory would be a blessing. Principal Stone's callousness forced her to watch another young child, GC, suffer as he tried to escape. It was Principal Stone's job to keep students and teachers safe.  Yet her principal abandoned her, isolated her, and retaliated against her when Mrs. Maki was trying to protect her students. Indeed, she placed Mrs. Maki in a situation where she would almost certainly be attacked and unable to defend herself.

The mistreatment and violence Mrs. Maki endured triggered her underlying trauma, forcing her to leave teaching and the workforce until 2021, and causing debilitating PTSD, anxiety, and suicidal ideations.  Treating psychologist Dr. Cheryl Hart, friend Davia Houston, daughter Hannah Maki, and husband Craig Maki, will testify regarding their own observations of Mrs. Maki's road to recovery and the harms and losses she has endured.

**I.  Video Footage showing the Hallway Outside of Room 112 is Missing or Deleted.**

Principal Stone insists that she or another educator directed by her constantly supervised Mrs. Maki while she was alone in the room with GC over three days. Ms. Stone said she constantly supervised Ms. Maki through a sidelight window next to the door to room 112. If she did, a security camera outside Room 112 would have conclusively shown this. However, BSD Assistant Superintendent Garth Steedman preserved only 1 hour, 57 minutes, and 7 seconds of footage from September 26, 2017. There is no other video footage. And witnesses

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

7

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

will concede that even the footage that does exist is incomplete, omitting GC's escape from the room and return under adult restraint.

The evidence will show that BSD destroyed evidence favorable to Mrs. Maki's case even though it knew a safety incident had occurred. Indeed, even the limited footage that BSD did produce contradicts Principal Stone's claim that she never abandoned Mrs. Maki:[1]



BSD failed to preserve or destroyed the footage from the afternoon of September 26th, and all the footage from September 27th and 28th, even though it had a duty preserve it. The state records retention policy, Mrs. Maki's September 2017 reports that Principal Stone isolated her in a room for three days, and the risk of a lawsuit from GC's parents for injuries and violations of his Individualized Education Program all show BSD failed its duty to preserve evidence. At the close of evidence, Mrs. Maki will ask this Court to include an adverse inference instruction.

---

[1] The door and sidelight window for Room 112 are pictured in the bottom left corner. At trial, witnesses will identify the woman pictured walking away from Room 112 as Principal Stone.

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

## III.    LIABILITY ISSUES FOR TRIAL

### A.    Bremerton School District Unlawfully Retaliated Against Mrs. Maki

Mrs. Maki brings a retaliation claim against Bremerton School District under the Washington Law Against Discrimination, Chapter 49.60 RCW (the "WLAD"). The WLAD's anti-retaliation provision proscribes employers from retaliating against employees for opposing "any practice" forbidden by "this chapter":

> It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has **opposed any practices forbidden by this chapter**, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

RCW 49.60.210(1) (emphasis added).

The anti-retaliation provision "extends broad protections" to "'any person'" that (a) engages in statutorily protected conduct where (b) the protected conduct is a substantial factor in the employer's "adverse employment action" against the employee. *Currier v. Northland Servs., Inc.*, 182 Wn. App. 733, 742, 332 P.3d 1006 (2014); *see Galbraith v. TAPCO Credit Union*, 88 Wn. App. 939, 950-51, 946 P.2d 1242 (1997) (describing the "broad language of RCW 49.60.210, the Legislature's mandate for liberal construction, and the strong public policy against discriminatory practices," and holding a person can bring a claim against their credit union under RCW 49.60.210(1) because the WLAD is not limited to employment discrimination).

### 1.  Mrs. Maki engaged in protected conduct when she opposed what she reasonably believed to be paraeducator LaLanne's sexual grooming of young students and when she raised concerns about Stone's failure to prevent it.

In Washington, a person engages in statutorily protected conduct when they oppose conduct that they reasonably believe constitutes "'**any** practice[] forbidden by' Chapter 49.60 RCW." *Currier*, 182 Wn. App. at 742 (emphasis added); RCW 49.60.210(1) (outlawing

PLAINTIFF'S TRIAL BRIEF                                9
(3:19-CV-05901-RJB)

retaliation for opposing "any practice forbidden by this chapter"); *see Galbraith*, 88 Wn. App. at 950-51.

According to the Washington State Supreme Court, a school district violates Chapter 49.60 RCW where its agents engage in sexual misconduct towards students. *W.H. v. Olympia Sch. Dist.*, 195 Wn.2d 779, 782-83, 789, 465 P.3d 322 (2020) (holding that a school district bus driver's sexual misconduct towards students violates the WLAD's public accommodations sections). A single act of sexual misconduct towards a student may violate the WLAD, even if not severe or pervasive. *See Floeting v. Grp. Health Coop.*, 192 Wn.2d 848, 855, 860-61, 434 P.3d 39 (2019) (holding that when a place of public accommodation is accused of harassment, Washington courts do not use the higher "severe or pervasive" standard used in employment settings. Rather, in places of public accommodation [such as schools], conduct is discriminatory when a reasonable person who is a member of the protected class would feel the act was discriminatory. The conduct must consist of more than "rhetoric that is subjectively offensive"); *W.H. v. Olympia Sch. Dist.*, 195 Wn.2d at 782-83 (holding that a school district violates the public accommodations sections of the WLAD when its agent engages in sexual misconduct towards students).

Under Washington regulations governing educator conduct, an educator commits "sexual misconduct" when they engage in "***sexual grooming***" of a student. WAC 181-88-060(1)(d); WAC 181-87-080(e). According to those regulations, sexual grooming includes behavior "such as befriending and/or establishing a connection with a student . . . to lower the student's inhibitions for the purpose of a sexual relationship." *Id.; see also, e.g., United States v. Hitt*, 473 F.3d 146, 152 (5th Cir. 2006) (detailing that "persons who sexually abuse children engage in a 'grooming process' designed to reduce resistance to sexual advances. This process, according to testimony, includes gift-giving, isolating the victim from his guardians,

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

10

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

and activity designed to desensitize the victim to sexual advances, *e.g.,* touching in an innocuous manner and thereafter escalating the sexual nature of the touches . . ."). Due to the seriousness of the conduct, Washington's mandatory reporting laws require educators to report sexual grooming to administrators.[2]

Here, Mrs. Maki will show that she engaged in statutorily protected conduct because she (i) opposed what she (ii) reasonably believed to be sexual grooming of the district's students.

### a. Mrs. Maki "opposed" Ms. LaLanne's sexual grooming by repeatedly reporting it to her supervisor and BSD.

Mrs. Maki unquestionably opposed paraeducator LaLanne's conduct when she directed LaLanne to stop and reported it to her Principal Stone and BSD's administration. *See, e.g., Currier*, 182 Wn. App. at 746 (complaints about conduct constitute opposition).

### b. Wendy Maki "reasonably believed" paraeducator LaLanne was sexually grooming her young students.

Mrs. Maki need only show that she was opposing what she reasonably believed to be discrimination. *Currier*, 182 Wn. App. at 739. She need not show that paraeducator LaLanne's conduct actually constituted sexual grooming. *Id.* To show reasonable belief, a plaintiff need only show that the alleged conduct was "arguably a violation of the law." *Id.; Estevez v. Faculty Club of Univ. of Washington*, 129 Wn. App. 774, 798, 120 P.3d 579 (2005). This standard "makes due allowance" for the "limited knowledge" most plaintiffs possess about discrimination law. *Currier*, 182 Wn. App. at 746 (citation omitted). For example, in *Currier*, the plaintiff, who was an independent contractor, reasonably believed he was opposing discrimination when he reported another independent contractor's single race-based

---

[2] *See* RCW 28A.400.317 (educators must report sexual misconduct by another employee to the appropriate school administrator); RCW 28A.400.301 (districts required to report past sexual misconduct); WAC 180-88-060 (defining sexual misconduct to include sexual grooming).

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

11

offensive comment to the party that hired them—even though that conduct clearly did not violate the WLAD. *See id.* at 746 ("The trial court found that Currier reasonably believed that a white independent contractor telling a Latino independent contractor that "Mexicans are good at crossing borders" was a discriminatory practice . . ..").

As detailed in the Joint Statement of Disputed Jury Instructions and the authority cited in support, "[s]exual grooming is a preparatory process in which an adult gradually gains a child's trust and lowers their inhibitions with the intent to eventually sexually abuse the child. The process is designed to desensitize the child to abuse and often begins with innocuous touches, boundary violations, or spending intimate time alone with the child. The groomer slowly escalates their conduct, with the goal of eventually progressing to blatant sexual acts." Dkt. 139 (citations omitted).

Here, the evidence will show that Mrs. Maki reasonably believed that Ms. LaLanne could be grooming young students. *Supra,* Section II.B.

### 2. Mrs. Maki's opposition was a substantial factor in BSD's adverse action

In a retaliation case, an adverse employment action is any action that "well might have" or "would" have dissuaded a reasonable employee from making or supporting any charge of discrimination. *Boyd v. State, Dep't of Soc. & Health Servs.*, 187 Wn. App. 1, 15, 349 P.3d 864, 871 (2015). An adverse action can be a single action such as a demotion. *Id.,* 14. Or it can be a series of adverse actions that "taken together" had the potential to dissuade a reasonable person in Mrs. Maki's position from opposing sexual grooming. *Id.,* 14, 15; *see Strother v. Southern Cal. Permanente Med. Group,* 79 F.3d 859, 869 (9th Cir.1996) (noting that being excluded from meetings, being denied telephone access, suffering some verbal and physical abuse at the hands of co-workers, being replaced as coordinator for personal physician program, being denied secretarial support, and being given a more burdensome work

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

12

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

schedule would demonstrate an adverse action, if proven). "[C]ontext matters in analyzing the significance of any given act of retaliation because an act that would be immaterial in some situations is material in others." *Boyd*, 187 Wn. App. at 13.

Here, Mrs. Maki will show that her opposition to grooming was a substantial factor in BSD subjecting her to a series of adverse employment actions. This includes, without limitation, BSD (1) failing to protect her from known retaliation by the paraeducator LaLanne, (2) refusing to provide Mrs. Maki with 1:1 paraeducator support; (3) subjecting her to increased employment scrutiny; (4) excluding her from decision-making by ignoring Mrs. Maki's repeated pleas that it was unsafe to isolate her alone in a room with a student Principal Stone knew to be unpredictably and uncontrollably violent; and (5) abandoning Mrs. Maki with that student despite a clear rule requiring BSD to constantly monitor her safety. Whether "taken together" or independently, these actions and others described by witnesses and documents "well might have" dissuaded a reasonable person in Mrs. Maki's position from opposing LaLanne's conduct or speaking up against Defendant Stone's mismanagement.

### 3. Mrs. Maki's proposed retaliation instructions clearly and accurately state the law that conforms to this case.

Washington encourages appropriate modification of its pattern instructions. The Pattern Instructions provide a "neutral starting point–*not an ending point*–for the preparation of instructions that are individually tailored for a particular case." Washington Pattern Jury Instruction ("WPI") 0.10 (7th ed.) (July 2019) (emphasis added). "The goal, always, is to finish with a set of instructions that clearly and accurately state the law that applies to the particular case, no more and no less." *Id.*

Under Washington law, jury instructions must: (1) allow each party to argue their theory of the case; (2) not be misleading; and (3) when read as a whole, properly inform the jury on the applicable law. *See Douglas v. Freeman*, 117 Wn.2d 242, 256–57, 814 P.2d 1160 (1991).

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

Once these conditions are satisfied, a trial court enjoys broad discretion to tailor its instructions to fit a case's facts, including the number of instructions and their specific wording. *See, e.g., Burchfiel v. Boeing Corp.*, 149 Wn. App. 468, 491, 205 P.3d 145 (2009).

### a. Mrs. Maki's instruction that a district cannot retaliate when a teacher opposes grooming of her young students is clear and accurate.

Mrs. Maki's case involves a unique fact pattern. To ensure that the jury properly understands the issues and the law, she requests the Court instruct the jury that:

> It is unlawful for a school district to retaliate against a teacher for opposing what the teacher reasonably believed to be sexual grooming of her young students.

Dkt. 139, pgs. 10-15 (citing authorities). This accurately states the law. *Supra*. Rather than describing opposition to "sexual harassment" or "sexual misconduct," Mrs. Maki appropriately proposes a subset of those terms that is specific to this case's facts: sexual grooming.

According to Defendants' objections, Mrs. Maki's proposed instruction is a "misstatement of the law" because Plaintiff's proposed instruction "omits" that the alleged discriminatory act must be "based on sex" or "gender." *See* Dkt. 139, pg. 10, 13, 15. Defendants apparently suggest that the below revised instruction would be proper.

> It is unlawful for a school district to retaliate against a teacher for opposing what the teacher reasonably believed to be discrimination against her young students based on sex.

This objection is not well-reasoned. Sexual misconduct directed toward students in public schools *is discrimination based on sex. See W.H. v. Olympia Sch. Dist*, 195 Wn.2d at 792-93 (discussing that "sexual harassment" and "sexual misconduct" are forms of "sex discrimination"). Therefore, opposing sexual misconduct toward students *is* opposing discrimination based on sex. Sexual grooming is one form of sexual misconduct. It follows that a school district who retaliates against a teacher for opposing what she reasonably believes is sexual grooming violates the WLAD. *See supra*.

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

14

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

Lawyers enjoy logic puzzles like this. But jurors are not accustomed to thinking of sexual grooming as a form of sex discrimination. The Court can and should substitute the term "sexual grooming" for "sexual misconduct" or "discrimination based on sex." Plaintiff's proposed instruction is a simple, clear, and accurate statement of the law, which conforms to the facts of this case and allows the Court to provide jurors with plain instruction so that they may answer the question of retaliation raised by this case. *See* WPI 0.10 (7th ed.) (July 2019) ("jury instructions need to express legal concepts in plain language for lay jurors").

Defendants' objection also may suggest that the instruction should specify that Mrs. Maki must have been opposing grooming aimed at only *one* sex or gender. *See* Dkt. 139, pg. 10, 13, 15. But there is no support for this proposition under Washington law. And in in *Bostock v. Clayton County*, the United States Supreme Court rejected the theory that excuses sex-based discrimination if it targets both male and females. *See Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1741 (2020) (it is not "a defense for an employer to say it discriminates against both men and women because of sex"); *see Oliver v. Pac. Nw. Bell Tel. Co., Inc.*, 106 Wn.2d 675, 678, 724 P.2d 1003 (1986) (where consistent with WLAD's liberal interpretation, Washington courts look to federal decisions interpreting Title VII as persuasive authority).

**b. Mrs. Maki's proposed instruction defining adverse action is appropriate.**

Plaintiff proposes instructing the jury that an adverse employment action is one that "well might have" dissuaded an employee from opposing grooming. Dkt. 139, pg. 19. Plaintiff's current proposed instruction states:

> The term "adverse" means unfavorable or disadvantageous. An employment action is adverse if it is harmful to the point that it well might have dissuaded a reasonable teacher from opposing sexual grooming of their young students. Whether a particular action is adverse is judged from the perspective of a reasonable person in Wendy Maki's position.

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

15

BLOOM LAW PLLC
3827C South Edmonds Street
Seattle, Washington 98118
(206) 323-0409

*Id.* Defendants object to "well might have" as a "misstatement of the law" under *Boyd*, 187 Wn. App. 1. Defendants are mistaken. *Boyd* expressly indicates that an action is adverse when it either "well might have" or "would" discourage opposition. *Boyd*, 187 Wn. App. at 15.

Defendants may intend to use the model instruction's use of "would" to argue that an adverse action must necessarily dissuade a reasonable employee. *See* Dkt. 139, pg. 16 (arguing that, under the model language, Mrs. Maki needs to show that the adverse action "will" dissuade a reasonable employee). But the law does not require that level of certainty. *See Boyd*, 187 Wn. App. at 13, 15. Any action or actions that "well might have" discouraged opposing sexual grooming is an unlawful adverse action. Using "well might have" in the jury instruction is accurate, informative, and allows both parties to argue their case.

Mrs. Maki also intends to update the proposed adverse action instruction to add a sentence instructing the jury that a series of actions "taken together" can be materially adverse:

> An adverse employment action can be a single action or it can be several actions that taken together well might have dissuaded a reasonable teacher from opposing sexual grooming. Whether a particular action or series of actions taken together are adverse is judged from the perspective of a reasonable person in Wendy Maki's position.

*See Boyd*, 187 Wn. App. at 15 ("taken in, context, a reasonable jury could find that these actions, taken together . . . would have dissuaded a reasonable worker from making a discrimination charge."). Because Mrs. Maki alleges Ms. Stone engaged in a host of retaliatory acts, this instruction is appropriate. *See supra.*

### 4. BSD Negligently Failed to Provide a Reasonably Safe Workplace.

To prove BSD was negligent, Mrs. Maki needs to show duty, breach, causation, and damage. *E.g., Schooley v. Pinch's Deli Mkt., Inc.*, 80 Wn. App. 862, 866, 912 P.2d 1044 (1996). BSD has a duty to provide a reasonably safe workplace. *E.g., Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn.2d 647, 650, 364 P.2d 796 (1961). Here, BSD breached that duty in numerous ways, including by (1) ordering Mrs. Maki to isolate alone in a room with a known

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

16

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

violent student; (2) placing a firehose over the hallway exit door; (3) failing to provide 1:1 paraeducator support; and (4) leaving Mrs. Maki unsupervised while alone with GC despite a rule requiring BSD to monitor her safety.

**5. Defendant Stone Violated Mrs. Maki's Section 1983 Rights.**

To prove her Section 1983 claim, Mrs. Maki needs to prove (1) Ms. Stone committed an affirmative act; (2) the act placed Mrs. Maki in a position of actual, particularized danger by exposing Mrs. Maki to a danger she would not have otherwise faced; (3) that Ms. Stone acted with deliberate indifference to a known or obvious danger; and (4) the affirmative act that created the danger caused injury that was foreseeable. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062-64 (9th Cir. 2006); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018). The Ninth Circuit has issued several decisions that show why Mrs. Maki will establish these elements and why Ms. Stone cannot maintain the qualified immunity defense discussed in Section V.

In *Grubbs I*, the Ninth Circuit sustained a workplace state-created danger claim where supervisors directed a female employee to work "alone" and unsupervised with an individual they knew would likely attack women if given the opportunity. *L.W. v. Grubbs*, 974 F.2d 119, 121-22 (9th Cir. 1992). There, the inmate raped a registered nurse at the prison. *Id.,* 120. Defendants had assigned the nurse to work with the inmate even though they knew that (1) the inmate had a history of violence against women and was likely to assault a woman, (2) the nurse was likely to be alone with the inmate during her rounds, and (3) the nurse would not be prepared to defend against or take steps to avert an attack. *Id., 121.* The Court reasoned that these allegations supported Section 1983 liability because the supervisor's acts independently created the opportunity for and facilitated the inmate's assault on her. *Id.,* 122.

Under *Pauluk*, the Ninth Circuit sustained a workplace state-created danger claim where supervisors directed an employee to work at a site over his "clear[]" safety-based objections, even though they knew the worksite's unsafe condition had harmed another employee in the past. *Pauluk v. Savage*, 836 F.3d 1117, 1125 (9th Cir. 2016). There, an employee requested not to be transferred to a particular location due to his concerns about

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

17

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

mold, but the supervisors transferred him "involuntarily." *Id*. The court held that the facts supported a section 1983 claim because when they ordered the transfer, the supervisors knew the worksite had a long history of mold exposure that had harmed another employee. *Id.*, 836 F.3d at 1119. Although not directly expressed in the Court's reasoning, a clear theme is that the supervisor also knew that employee was not able to adequately defend himself from the mold spores. *See generally id.*

In *Kennedy*, the Ninth Circuit sustained a state-created danger claim where the defendant failed to keep his clear promise to sporadically supervise the plaintiff's safety in the face of a known and immediate risk. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1057 (9th Cir. 2006). There, the "police officer knew the neighbors' son had a history of aggravated violence, including previously breaking into a house to attack someone." *Id*. 1057-58, 1064. He also knew the plaintiffs feared swift retaliation once the boy learned they had accused him of a crime, which is exactly why the officer promised to provide additional patrols *that night* after notifying the boy. *Id.*, 1058. The officer, however, did not provide the additional patrols and the boy broke into the home and shot the plaintiffs. *Id*. The Court reasoned that the officer acted with deliberate indifference because, among other things, he "reassured" the "visibly frightened" plaintiffs of increased security that was "never provided or plainly ineffective" and had detailed knowledge of the threat presented by the boy. *Id.*, 1065; *see also Patel v. Kent Sch. Dist.*, 648 F.3d 965, 975 (9th Cir. 2011) (applying and analyzing the officer's promise of safety in *Kennedy*).

In contrast, in *Patel*, the Ninth Circuit rejected a state-created danger claim where, although the defendant schoolteacher broke a clear promise to constantly supervise the student's safety, he did not know there was an immediate danger. *Patel*, 648 F.3d at 975-76. There, the district promised to constantly supervise the student because the school knew of the general danger other students might manipulate her, "especially [at] bathroom time." *Id*. at 968-70. But when a teacher let the student take "quick" unsupervised trips to the bathroom, he did not know of the specific, immediate danger: that another student was having sex with the disabled student in the bathroom. *Id*. at 970. The Court held that although it was important

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

the teacher "made a promise she allegedly failed to keep—supervising [the student] at all times," the teacher's actions did not constitute deliberate indifference because he had not known of the "*immediate* danger in allowing [the student] to briefly use the next-door bathroom alone." *Id.* at 975-76 (emphasis in original).

### a.  Ms. Stone committed affirmative acts.

In analyzing whether Ms. Stone committed an affirmative act, courts examine whether her acts left Mrs. Maki "in a situation that was more dangerous than the one in which [she] found [Mrs. Maki]." Here, the evidence will show that Ms. Stone committed several affirmative acts, including ordering Mrs. Maki to isolate alone with GC, placing the firehose over the door, including after Mrs. Maki objected, and leaving Mrs. Maki unsupervised while alone with GC despite promising to monitor the room.  *See, e.g., Pauluk*, 836 F.3d 1117, 1124 (directing plaintiff to work at specific job site over employee's objection constituted affirmative act).

### b.  The acts placed Mrs. Maki in particularized danger

Here, Ms. Stone's acts placed Mrs. Maki in particularized danger: she ordered Mrs. Maki to isolate alone and in close proximity with a student that she knew had repeatedly attacked educators, including in the previous days. *See, e.g., Hernandez*, 897 F.3d at 1133 (directing plaintiffs towards a crowd of known violent protestors created actual, particularized danger).

### c.  Ms. Stone acted with deliberate indifference

Deliberate indifference is the required mental state.  *Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir. 2018). A defendant acts with deliberate indifference where they "recognized an unreasonable risk and actually intended to expose" the plaintiff to such risks "without regard to the consequences to" the plaintiff. *Id*. Here, Mrs. Maki will show that Ms. Stone acted with deliberate indifference when, over Mrs. Maki's objections that it was unsafe, Ms. Stone ordered her to isolate alone in a room with a student that Ms. Stone knew to be

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

19

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

unpredictably and uncontrollably violent. Then, Ms. Stone abandoned Mrs. Maki despite promising to constantly monitor her safety. *See, e.g., Grubbs I*, 974 F.2d at 121-22; *Pauluk*, 836 F.3d at 1125; *Kennedy*, 439 F.3d at 1057. Ms. Stone knew that GC had repeatedly attacked teachers over the prior months, and that his behavior was escalating right before the attack. She also had been warned not to confine GC.

### d. Mrs. Maki's injury was foreseeable.

Here, the injury to Mrs. Maki was foreseeable because, among other things, Ms. Stone knew that GC had repeatedly injured other teachers, Mrs. Maki had warned that isolating alone with GC was unsafe, that Mrs. Maki was extremely upset because of the isolation, and Ms. Stone knew an educator should never be alone with GC.

### 6. Mrs. Maki's proposed instruction regarding deliberate indifference is clear and accurate.

The Ninth Circuit's Pattern Instructions are intended to "give the jurors, in understandable language, information to make the trial more meaningful . . .." Manual of Model Jury Instructions for the Ninth Circuit, 2017 Edition (March 2021), Introductory comment. Judges are given "substantial latitude in tailoring the instructions" if the instructions do not mislead, accurately state the law, and fairly and adequately cover the issues presented. *See Lewy v. S. Pac. Transp. Co.*, 799 F.2d 1281, 1287 (9th Cir. 1986). Here, Mrs. Maki proposes modifying the deliberate indifference instruction to make it more understandable to the layperson.

In the Ninth Circuit the defendant acts with deliberate indifference if she:

> recognized an unreasonable risk and actually intended to expose the [the plaintiff] to such risks without regard to the consequences to [the plaintiff]. ***In other words***, the [defendant] must have known that something was going to happen but ignored the risk and exposed [the plaintiff] to it anyway.

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

20

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

*Hernandez*, 897 F.3d at 1135 (internal citations, quotations, and brackets omitted) (emphasis added).

A lawyer trained in legalese and interpreting case law can parse that these two statements express the same standard. But juries are not trained lawyers. They are engineers, teachers, and blue-collar workers.  Instructing them that Ms. Stone "*must have known that something was going to happen*" risks confusion. The jury may be misled into believing that Ms. Stone had to have conclusively known that GC would attack Mrs. Maki. But that is not the law. For example, in *Kennedy*, the police offer knew that the son had a history of aggravated violence, including breaking in, and that the plaintiffs were afraid the boy would attack them after he learned they had accused him of a crime. *Supra*. It was not a certainty that the boy would attack the plaintiffs or break in. *Supra*. To avoid confusing the jury with legalese, Mrs. Maki proposes modifying the Pattern Instruction to include *Hernandez*'s straightforward definition:

> In this context, "deliberate indifference" means that Susan Stone disregarded a known or obvious consequence of their actions.  ~~In other words, Susan Stone must have known that something was going to happen but ignored the risk and still exposed Wendy Maki to that risk.~~  <u>Susan Stone must have recognized an unreasonable risk and intended to expose Wendy Maki to such risk without regard to the consequences to her.</u>

Dkt. 139, pg. 27 (showing modifications). This language is a simple, clear, and accurate statement of the law. The Court should revise the instruction.

**7. Linda Sullivan-Dudzic ratified Susan Stone's constitutional violation.**

"If [a final policy maker] approve[s] a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Ratification occurs when the official policymaker involved has adopted and expressly approved of the acts of others who caused the constitutional violation.  *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996). There must be

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

21

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

evidence that the policymaker "made a deliberate choice to endorse" the subordinate employee's actions. *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992). "A single decision by a municipal policymaker can be sufficient, even though the decision is not intended to govern future situations. *Lytle v. Carl*, 382 F.3d 978, 987-88 (9th Cir. 2004)

Here, BSD has stipulated that Ms. Sullivan-Dudzic was a final policymaker for BSD. Ms. Sullivan-Dudzic was aware of the significant danger that GC presented to educators. And she knew that Mrs. Maki was extremely upset about being placed in the room with GC. Despite this, she expressly ratified the plan to isolate Mrs. Maki alone in a room with GC and place the firehose over the exterior door. At that time, she knew that using the firehose was "unsafe."

## IV.   DAMAGES ISSUE FOR TRIAL

### A.   Mrs. Maki will Present Evidence of Economic Losses and Emotional Damages Proximately Caused by Defendants' Conduct

Mrs. Maki will seek compensatory damages, including damages for lost wages, lost benefits, physical harm, and psychological injuries. Due to her trauma, Mrs. Maki was unable to work between October 2017 and March 2021. Although she returned this spring to a Clinical Practice program teaching special education at Pleasant Valley Middle School, it was an unpaid position. And while she intends to return to paid work in the near future, it is uncertain whether she will be able to. And even if she does, it will be more likely than not at a reduced rate from what she would have made but for BSD's wrongful actions.

Mrs. Maki is also entitled to non-economic compensatory damages. Mrs. Maki has developed debilitating mental distress, anxiety, PTSD, and has suffered from suicidal ideations. BSD's actions left Mrs. Maki debilitated and traumatized for years. Those damages are still ongoing.

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

22

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

**B**      **Mrs. Maki is Entitled to Punitive Damages against Defendant Stone**

For § 1983 claims, "[i]t is well-established that a 'jury may award punitive damages . . . either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993).   Further, "malicious, wanton, or oppressive acts or omissions are also "proper predicates for punitive damages under § 1983." 422 F.3d 800, 807 (9th Cir. 2005). Here, because Defendant Stone recklessly and callously ordered Mrs. Maki to isolate alone with a known violent student and violated clear safety rules by abandoning her alone with the student, Mrs. Maki will establish reckless indifference supporting punitive damages.

## V.      AFFIRMATIVE DEFENSES

## A.      The Qualified Immunity Defense Does *Not* Apply

Ms. Stone seeks qualified immunity against Mrs. Maki's Section 1983 claims. The Ninth Circuit's recent decision in *Hernandez* clearly establishes the defense does not apply. The Court set forth the test for qualified immunity:

> Qualified immunity protects government officers from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. To determine whether an officer is entitled to qualified immunity, the Court asks, in the order it chooses, (1) whether the alleged misconduct violated a constitutional right and (2) whether the right was clearly established at the time of the alleged misconduct.  When this test is properly applied, it protects all but the plainly incompetent or those who knowingly violate the law.

*Hernandez*, 897 F.3d at 1132 (internal citations, quotations, ellipses, and brackets omitted).  To find a clearly established right, there does not need be a case with "materially similar facts"– instead, the "preexisting law" must have "provided the defendants with 'fair warning' that their conduct was unlawful." *Kennedy*, 439 F.3d at 1065 (9th Cir. 2006).

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

Mrs. Maki alleges that Ms. Stone violated her Section 1983 rights over three days in September 2017. Ms. Stone knew that GC was uncontrollably and unpredictably violent. And she knew that he would likely attack Mrs. Maki if placed alone in a room with her. Despite this, she ordered Mrs. Maki to isolate alone in a room with known violent person and then abandoned Mrs. Maki despite a rule requiring Ms. Stone to constantly monitor her safety. This violation was compounded by Ms. Stone using a firehose to lock the classroom door with Mrs. Maki inside, even though she had admitted it was unsafe.

Ninth Circuit case law, including *Grubbs I*, *Pauluk, Kennedy*, and *Patel*, (*supra*) show that Ms. Stone violated a constitutional right that was clearly established in 2017:

- Under *Grubbs I*, it is clearly established law that a supervisor cannot order an employee to work alone and unsupervised with a known violent person who is likely to attack the employee if the employer knows the employee likely cannot protect themselves. *See* 974 F.2d at 121-22 (1992).

- Under *Pauluk*, it is clearly established law that a supervisor cannot order a subordinate to work in close proximity to a known dangerous condition that the supervisor knows the employee is unable to protect themselves from. *See* 836 F.3d at 1125 (2016).

- Under *Patel* and *Kennedy*, it is clearly established law that an educator cannot violate a promise to supervise another's safety in the face of a known and immediate risk. *Patel*, 648 F.3d at 975-76 (2011); *Kennedy*, 439 F.3d at 1057-58, 64-65 (2006).

Any of these cases, standing alone, show that Ms. Stone violated clearly established constitutional rights. When viewed jointly, they buttress the conclusion that Ms. Stone had "fair warning" her conduct was unlawful.

## VI.   OTHER ISSUES

### A.   The Court should take judicial notice of Washington's Core Retention Policies.

The Court may "take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d). Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

24

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

questioned." Fed. R. Evid. 201(b)(2). "Under Rule 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies." *U.S., ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015); see, e.g., *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (taking judicial notice of the information on the websites of two school districts because they were governmental agencies). When a fact is noticed, the court must instruct the jury to accept the noticed fact as conclusive. Fed. R. Evid. 201(f).

Mrs. Maki's position is that public records available on the website of the Office of the Secretary of State of Washington required BSD to preserve video from September 26, 27, and 28. Mrs. Maki does not request the Court to take judicial notice of the significance of these documents or their contents. It only requests that the Court take judicial notice of the authenticity of these public records.

Here, the Office of the Secretary of State of Washington maintains a website regarding retention schedules for state public agencies.[3] Within that website, it maintains the Local Government Common Records Retention Schedule ("CORE") – Version 4.1.[4] The document contained at that website sets forth the retention schedule that applies to "all local government agencies," as "approved by the Local Records Committee in accordance with RCW 40.14.070." The retention schedule requires that agencies retain specified records, including security footage, for the "minimum retention period as specified in this schedule." That document also enumerates all revisions to it since 2008.  Mrs. Maki requests that the Court take judicial notice of the public record contained at the following link and issue an appropriate instruction:

---

[3](available at:
https://www.sos.wa.gov/archives/recordsmanagement/usingthelocalgovernmentcommonrecordsretentionschedulecore.aspx) (last accessed 6/28/21)
[4] (available at: https://www.sos.wa.gov/_assets/archives/recordsmanagement/local-government-common-records-retention-schedule-(core)-v.4.1-(august-2020).pdf) (last accessed 6/28/21).

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

25

- https://www.sos.wa.gov/_assets/archives/recordsmanagement/local-government-common-records-retention-schedule-(core)-v.4.1-(august-2020).pdf

The website for the Office of the Secretary of State of Washington also lists on its site a retention schedule that applies to Public Schools (K-12) and Educational Service Districts.[5] That public record provides that it is to be "used in conjunction with" the CORE retention policy. That document also enumerates all revisions to it since 1976.  Accordingly, Mrs. Maki requests that the Court take judicial notice of the public record contained at the following link and issue an appropriate instruction:

- https://www.sos.wa.gov/_assets/office/public-schools-(k-12)-records-retention-schedule-v.8.4-(april-2021).pdf

**B.     At the close of evidence, the Court should issue an adverse inference instruction.**

Plaintiff previously brought a spoliation motion due to BSD's apparent destruction of the security footage outside Mrs. Maki's classroom. Dkt. 36. Because the Court found there were issues of fact regarding spoliation, it declined to issue an instruction at that time. But cautioned that it might do so or issue other sanctions at trial. Dkt. 49. If Plaintiff establishes spoliation at trial, the Court should issue an appropriate spoliation instruction, to be submitted at that time.

**C.     The Court should allow Plaintiff's counsel to ask defense witnesses Susan Stone, Kimberly Shipp, Garth Steedman, Denise Kennedy, and Linda-Sullivan Dudzic leading questions and prevent defense counsel from leading its own friendly witnesses called in the Plaintiff's case in chief.**

Plaintiffs in employment cases like this one must often call adverse witnesses in their case in chief. Under Fed. R. Evid 611(c), the Court should allow leading questions "when a party

---

[5] (available at: https://www.sos.wa.gov/_assets/archives/recordsmanagement/local-government-common-records-retention-schedule-(core)-v.4.1-(august-2020).pdf)(last accessed 6/28/21).

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

calls a hostile witness, an adverse party, or a witness identified with an adverse party." An opposing party's employee or an employee at the time of the tort is generally considered to be "identified" with an adverse party. *See Chonich v. Wayne County Community College,* 874 F.2d 359, 368 (6th Cir. 1989) (allowing leading questions on direct examinations of community college's former president and personnel director).[6]

The ancillary rule also must apply. "A party cannot ask his own witness leading questions." Notes of Advisory Committee on Proposed Rules, FRE 611. Just as a party may not vouch for his own witnesses, FRE 607, a party may not lead his witness after being called in the opponent's case in chief because such "cross-examination is in form only and not in fact, as for example the 'cross-examination' of a party by his own counsel after being called by the opponent (savoring more of re-direct)…" *Id.*

The witnesses listed below should be treated as adverse when called in Mrs. Maki's case in chief and Defendants must not lead these witnesses:

- <u>Defendant Susan Stone.</u> (Named Defendant).

- <u>Former Defendant Linda Sullivan-Dudzic,</u> whom BSD employs as a District Administrator in the position of Director of Special Programs & Alternative Education.[7] Ms. Sullivan-Dudzic was a named defendant until the parties settled her claims in June 2021. And Plaintiff alleges that she ratified Ms. Stone's section 1983 violations.

---

[6] *Haney v. Mizell Mem'l Hosp.,* 744 F.2d 1467, 1478 (11th Cir. 1984) (nurse employed by defendant at the time of the tort is "identified"); *Walker v. Target Corp.,* 2:16-CV-42-KS-MTP, 2017 WL 2987282, at \*5 (S.D. Miss. 2017) (finding that "witnesses who were employees or agents of a defendant at the time of the alleged tort are identified with a party adverse to the plaintiff"). *Fehr v. SUS-Q Cyber Charter Sch.,* No. 4:13-cv-01871, 2015 WL 6166627, at \*3 (M.D. Pa. 2015) ("The term 'witness identified with an adverse party' is intended to apply broadly to an identification based upon employment by the party or by virtue of a demonstrated connection to an opposing party.").
[7] (available at https://www.bremertonschools.org/Page/7733) (last accessed 6/28/21) (showing Ms. Sullivan-Dudzic as an employee of BSD as of 6/28/21).

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

27

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

- <u>Garth Steedman</u>, whom BSD employs as a District Administrator in the position of Assistant Superintendent. Dkt. 96. Mr. Steedman is also the person who allegedly failed to preserve security footage.

- <u>Denise Kennedy</u>, whom BSD employed as a District Administrator in the position of BSD's long-time HR Director, including at the time of the events in this case. *See* Dkt. 96. She is cooperating with defense counsel. *See, e.g.,* Dkt. 129 (declaration of Denise Kennedy). On the other hand, she has failed to return any of Plaintiff's counsel's voicemail messages or calls. When she did answer one of counsel's calls, she terminated the call after approximately 30 seconds and asked not to be called again. Indeed, she has described counsel's attempts to speak to her as "unwelcome." *Id.*  And she is also the person who allegedly "misfiled" documents that Plaintiff believes may be explosive to her case. *See* Dkt. 122 (motion for relief and sanctions).

- <u>Kimberly Shipp</u>, whom BSD employed as a District Administrator in the position of Assistant Director of Special Services during the events relevant to this case. She initially agreed to speak with Plaintiff's counsel. But during that call, she omitted mention of her text suggesting that Ms. LaLanne is a repeated rulebreaker. *See id*. And, since then she has communicated, through defense counsel, that Plaintiff's counsel should not contact her.

Each of the above witnesses is a party opponent, speaking agent, or known to be hostile to Mrs. Maki's case. The Court's advanced ruling will streamline the presentation of evidence during trial.

## V.   CONCLUSION

Wendy Maki values the opportunity to appear before the Court.


RESPECTFULLY SUBMITTED this 28th day of June 2021.



                                        BLOOM LAW PLLC


                                        By:  /s/ Beth Bloom
                                        Beth Bloom WSBA #31702
                                        By:  /s/ Jay Corker Free

Jay Corker Free WSBA #51393
3827C South Edmunds Street
Seattle, Washington 98118
Telephone: (206) 323-0409
E-mail:  bbloom@bloomlawpllc.com
                jfree@bloomlawpllc.com

GALLAGHER LAW OFFICE PS


By:  /s/ Daniel C. Gallagher
Daniel C. Gallagher WSBA #21940
10611 Battle Point Drive NE
Bainbridge Island, Washington 98110-1493
Telephone: (206) 855-9310
Facsimile: (206) 462-1557
E-mail: dan@nwprolaw.com


A BOE LAW FIRM PS


By:  /s/ Deborah A. Boe
Deborah A. Boe WSBA #39365
5600 Kitsap Way
Bremerton, Washington 98312
Telephone: (360) 692-1133
E-mail: Deborah.boelawfirm@gmail.com


Attorneys for Plaintiff Wendy A. Maki

<u>CERTIFICATE OF SERVICE</u>

I, Dan Gallagher certify and state as follows:

1.      I am a citizen of the United States and a resident of the state of Washington; I am over the age of 18 years and not a party of the within entitled cause.  I am employed by the law firm of Gallagher Law Office, whose address is 10611 Battle Point Drive NE, Bainbridge Island, Washington 98110.

2.      I caused the foregoing document to be served upon counsel of record at the address and in the manner described below, on June 28, 2021.

Francis S. Floyd #10642
(ffloyd@floyd-ringer.com)

John A. Safarli, WSBA # 44056
jsafarli@floyd-ringer.com

Danielle P. Smith, WSBA # 49165
dsmith@floyd-ringer.com

FLOYD, PFLUEGER & RINGER, P.S.
200 W. Thomas St., Ste. 500
Seattle, WA 98119
Telephone: (206) 441-4455
Facsimile: (206) 441-8484
jsafarli@floyd-ringer.com

Attorneys for Defendants

[ ]  U.S. Mail

[ ]  ABC Legal Messenger

[ ]  Facsimile

[ ]  E-Mail

[X]  Via CM/ECF

Daniel C. Gallagher, WSBA # 21940
GALLAGHER LAW OFFICE PS
10611 Battle Point Drive NE
Bainbridge Island, Washington   98110
Telephone:  (206) 855-9310
Facsimile:  (206) 462-1557
dan@nwprolaw.com

Deborah A. Boe, WSBA # 39365
A BOE LAW FIRM PS
5600 Kitsap Way
Bremerton, WA  98312
Telephone and Facsimile: (360) 692-1133
Deborah.boelawfirm@gmail.com

[ ] U.S. Mail

[ ] ABC Legal Messenger

[ ] Facsimile

[ ] E-Mail

[X] Via CM/ECF

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

30

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

Beth Bloom, WSBA #31702
BLOOM LAW PLLC
3827-C South Edmunds St
Seattle, WA  98118
Telephone:  (206) 323-0409

Attorneys for Plaintiff


I hereby declare under the penalty of perjury of the laws of the State of Washington that the foregoing is true and correct.

DATED on this 28th day of June, 2021.


/s/ Dan Gallagher

PLAINTIFF'S TRIAL BRIEF
(3:19-CV-05901-RJB)

31

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409