THE HONORABLE ROBERT J. BRYAN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WENDY A. MAKI,<br><br>        Plaintiff,<br><br> vs.<br><br>BREMERTON SCHOOL DISTRICT, SUSAN K. STONE, and her marital community<br><br>        Defendants. | CASE NO.:  3:19-cv-05901-RJB<br><br>PLAINTIFF'S MOTION FOR A NEW TRIAL<br><br>Note for Motion: September 3, 2021 |

I. INTRODUCTION

  Plaintiff Wendy Maki moves under FRCP 59(a) and requests a new trial on all her claims. Most importantly, the Court improperly dismissed the Washington Law Against Discrimination retaliation claim under CR 50(a). The Court's ruling contradicts Washington law, misconstrues the evidence presented at trial, and discourages teachers from reporting possible educator-student sexual abuse. Contrary to the Court's ruling, there is no question that a reasonable juror could have found protected activity, adverse action, and causation. Moreover, during expert testimony *and* closing arguments, the Court committed reversible error when it permitted the District to read verbatim a non-testifying witness' highly prejudicial and unsworn statement without issuing a limiting instruction. A new trial is justified on all claims.

| | | |
|---|---|---|
| PLAINTIFF'S CR 59(a) MOTION<br>(3:19-CV-05901-RJB) | 1 | BLOOM LAW PLLC<br>3827C South Edmunds Street<br>Seattle, Washington 98118<br>(206) 323-0409 |

Concurrent with this Motion, Maki is filing a Motion to Certify Issues to the Washington State Supreme Court. As detailed in that Motion, Plaintiff requests that the Court stay a decision on this Motion until that certification process completes, to provide clarity on the law.

## II.     BACKGROUND

Maki enumerates the facts relevant to this motion in the Discussion section below.

## III.     DISCUSSION

### A.     Legal Standard

Under FRCP 59(a), the Court must grant a motion for a new trial where, as here, it committed a "manifest error of law."[1] Here, the Court committed that error when it dismissed Maki's retaliation claim under FRCP 50(a).[2] Under that rule, a court is only allowed to issue a directed verdict if it concludes that no reasonable juror could find in favor of the non-moving party.[3] The Court should only grant such a motion where "there is a complete absence [of] proof" or when "when no disputed issues of fact exist such that reasonable minds would not differ."[4] In determining whether this high standard was met, courts must view the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.[5] Importantly, courts may not make credibility determinations or weigh the evidence because these functions are reserved to the jury.[6] And courts are barred from substituting their judgment for that of the jury,[7] as the Court did here. Indeed, this Court improperly "intrude[d] upon the rightful province of the jury" and granted a

---

[1] *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978).
[2] As detailed below, the Court also committed manifest error when it allowed the District to read an unsworn letter into the record.
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).
[4] *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867 (6th Cir. 2001); *see also Peterson v. Hager*, 724 F.2d 851, 853 (10th Cir. 1984) "a directed verdict is proper only when the evidence is so patently in favor of the moving party").
[5] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).
[6] *Id*. at 150–51.
[7] *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151 (9th Cir. 1988).

"highly disfavored" motion.[8] It acted as a "super juror" and invaded the jury's province.

Moreover, before granting a Rule 50(a) motion, courts are required to apprise the non-moving party of the materiality of the unproved and dispositive fact and *provide that party with an opportunity to present any available evidence to address that fact*.[9] The Court failed to do so; indeed, it issued its ruling after all parties had rested.[10] And it afforded Maki no opportunity to address the alleged deficiencies.

B.     A Reasonable Juror Could Have Found the District Retaliated Against Maki

As detailed in numerous motions,[11] a teacher engages in statutorily protected activity where she reports what she reasonably believes could be sexual grooming, sexually inappropriate touching, or sexual misconduct, towards her students. Accordingly, the Court was required to submit the case to the jury where a reasonable juror could find: (a) Maki reported what she reasonably believed could be grooming, sexual misconduct, or even inappropriate sexual touching; (b) an adverse employment action; and (c) cause.[12] This Court committed manifest error when it ruled that no reasonable juror could find these elements.

1.  A Reasonable Juror Could Have Found Maki Opposed What She Reasonably Believed Could Be Grooming.

    a.  Maki "opposed" Ms. LaLanne's possible sexual grooming by repeatedly reporting it to her supervisor and BSD.

When the Court dismissed the retaliation claim, it reasoned that because Maki's job duties required her to report LaLanne's conduct, that weighed against her having engaged in protected conduct.[13]  This reasoning contravenes Washington law: Whether an employee's

---

[8] *See Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C. Cir. 1994).
[9] *Waters v. Young*, 100 F.3d 1437, 1442 (9th Cir. 1996).
[10] *See* Free Declaration, Ex. A (Oral Ruling) at 4:22-5:6.
[11] *E.g.,* Motion to Certify; Dkt. 139 (Disputed Instructions), pgs. 10-12; 146 (Trial Brief); 171 (CR 50(a) Response), pgs. 10-14; 174.
[12] *Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 411, 430 P.3d 229 (2018).
[13] Free Declaration, Ex. A (Oral Ruling) at 4:22-5:6.

PLAINTIFF'S CR 59(a) MOTION
(3:19-CV-05901-RJB)

3

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

duties require them to report conduct is irrelevant.[14] Instead, the test is *only* whether the employee opposed what they reasonably believed could be discrimination.[15] Here, Maki unquestionably "opposed" paraeducator LaLanne's conduct when she directed LaLanne to stop touching children and reported it to Principal Stone and BSD's administration.[16]

### b. Maki "reasonably believed" paraeducator LaLanne might be sexually grooming her young students based on significant evidence.

The evidence shows that Maki opposed what she *reasonably believed could be* a violation of the WLAD.[17] As detailed in prior briefings, this standard is a low bar intended to encourage plaintiffs to report possible discrimination.[18] For example, the WLAD protects employees who report "possible" or "suspected" discrimination.[19] And because courts want to encourage employees to report discrimination before it is fully completed, the possible grooming or sexual misconduct process can be just beginning.[20]

Here, based on her detailed training and experience in recognizing grooming,[21] Maki reported what she believed were "signs" of "grooming" behavior and/or sexually "predatory" behavior towards three male students by a District paraeducator.[22] For example, evidence showed Maki had knowledge of: the paraeducator snuggling alone with the male students in dark closets; posting pictures of a half-naked student online; pressing students into her breasts and buttocks; warnings that the paraeducator was "touchy feely;" the paraeducator

---

[14] *Lodis v. Corbis Holdings, Inc.*, 172 Wn. App. 835, 852, 292 P.3d 779 (2013) (an employee need not "step outside" their normal job duties to engage in protected activity).
[15] See *id*.
[16] *Infra; see, e.g., Currier*, 182 Wn. App. at 746 (complaints about conduct constitute opposition).
[17] *See, e.g., Currier*, 182 Wn. App. at 739; Dkts. 171, pgs. 15-16 and 174, pgs. 9-10 (citing and discussing authorities).
[18] *See* Dkts. 171, pgs. 15-16 and 174, pgs. 9-10 (citing and discussing authorities).
[19] *See* Dkt. 171, pgs. 15-16 (citing and discussing authorities).
[20] *See id.* at 16 (citing authority).
[21] Free Decl., Ex. B (Maki Testimony) at 3:17-4:24, 6:16-7:25, 8:1-11:8, 26:12-20, and 34:21-35:5.
[22] *Id.*, 3:17-11:8, 17:22-18:1, 20:9-22:4, 23:7-24:16, 28:15-29:2, 58:18-25; Trial Ex. 14 (pg. 1).

pushing her bottom into children's' heads and petting their hair;[23] and the para supplying a student with supplies to masturbate at school and advocating that he be allowed to do so.[24]

And, most concerningly, the male elementary school students the paraeducator kept touching displayed a classic sign of sexual abuse: oversexualization.[25] For example, they "molested" others, were "predatory," and grabbed the para's nipples.[26] Another student engaged in "very adult-like masturbation."[27] Maki and others repeatedly directed the paraeducator to stop touching those students, but the paraeducator refused to listen and became "hostile," which was a further sign the paraeducator was being "predatory."[28] This conduct, viewed together, created a picture of possible sexual grooming or misconduct.

### c. A reasonable juror could have found the District suspected Maki was reporting grooming or sexual misconduct.

In its oral ruling, the Court reasoned that Maki "primarily" reported "boundary violations" to the District, and that such reports of boundary violations are not protected.[29] The Court's ruling, however, misconstrues the evidence and the legal standard. As previously detailed, the law does not require Maki to use "magic words," such as "grooming" or "sexual misconduct" when reporting concerns.[30] Instead, her reports, including of boundary violations, needed only contain enough detail for the District to suspect Maki was reporting possible

---

[23] Free Decl., Ex. B (Maki Testimony) at 20:9-13, 20:18-21:3, 21:4-7, 23:7-24:16, 25:16-21, 57:9-23; Ex. C (Maki Testimony) at 74:2-19; Ex. D (House Testimony) at 14:8-11, 25:17-25, 26:17-23, 33:20-34:7, 36:6-17; Ex. E (Steedman Testimony) at 66:2-6, 66:18-67:4; Trial Exs. 13; 14 (pg. 8-9); 15; 16 (pgs. 1-3); 17b (pg. 2); 17d.
[24] Free Decl., Ex., B (Maki Testimony) at 57:9-23; Ex. C (Maki Testimony) at 74:2-19, 107:9-20; Trial Exs. 14 (pg. 7), 16 (pg. 2), 17d (pg. 2).
[25] Free Decl., Ex. E (Steedman Testimony) at 67:8-22, 145:10-146:15; Ex. G (Kennedy Testimony) at 2:17-4:8, 40:8-41:13; Ex. D (House Testimony) at 21:5-20; Ex. B (Maki Testimony) at 17:17-18:1, 21:18-22:4, 40:8-19, 56:9-57:17; and Ex. C (Maki Testimony) at 65:24-66:18; Trial Exs. 14 (pgs. 2, 7, 8); 16 (pgs. 1-2); and 73.
[26] *Id*.
[27] *Id*.
[28] Free Decl., Ex. H (Stone Testimony) at 27:21-28:11; Ex. B (Maki Testimony) at 29:15-20, 39:19-40:4, 41:3-13, 58:3-59:12; and Ex. G (Kennedy Testimony) at 15:25-16:9; Trial Exs. 13; 110.
[29] Free Decl., Ex. A (Oral Ruling) at 4:22-5:6.
[30] Dkt. 174, pgs. 6-7; 171, pg. 14.

PLAINTIFF'S CR 59(a) MOTION
(3:19-CV-05901-RJB)

5

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

grooming or sexual misconduct.[31] As detailed by the authorities cited in those motions, the bar for what puts an employer on notice is low to help eradicate discrimination.[32]

Here, Maki's reports before April or May 2017 did not expressly reference the magic words "sexual grooming" or "sexual misconduct."[33] But based on the context and interpreting all reasonable inferences in Maki's favor, a reasonable juror could have found that the District reasonably suspected that Mrs. Maki was reporting possible sexual grooming and misconduct. Maki's reports included: (a) LaLanne "cozying" "alone" in a "dark" space with a student;[34] (b) LaLanne snuggling with a student on a beanbag chair;[35] (c) Maki unexpectedly returning to the classroom and catching LaLanne alone in a dark closet snuggling with and touching a student;[36] (d) that on two occasions LaLanne posted pictures of a "furless"/half-naked student online (pictures concerning enough to justify a CPS report);[37] (e) that while LaLanne was barred from school property she had waited outside the playground for a student she had "boundary issues" with;[38] (f) LaLanne "sick[eningly]" taking pictures of a student and telling them she is thinking about them;[39] and (e) a litany of other concerning touching and conduct.[40]

Moreover, in meetings Mrs. Maki called *for the purpose of sharing concerns about LaLanne's inappropriate conduct towards students*, she repeatedly reported that three male

---

[31] *Id.*
[32] *See id.* (citing and discussing *Cornwell v. Microsoft Corp.*, 192 Wn.2d at 417 and other authorities).
[33] Free Decl., Ex. C (Maki Testimony) at 65:4-6.
[34] Trial Ex. 15; Free Decl., Ex. B (Maki Testimony) at 33:18-34:18.
[35] Free Decl., Ex. H (Stone Testimony) at 9:23-10:2; Trial Ex. 14 (pg. 8);
[36] Free Decl., Ex. H (Stone Testimony) at 3:3-11, 21:6-8, 27:21-28:3; Trial Exs. 14 (pg. 7, 12); 16 (pg. 2); 17d.
[37] Free Decl., Ex. G (Kennedy Testimony) at 9:7-14, 12:12-13:19; Ex. H (Stone Testimony) at 21:9-19; Trial Exs. 14; 16 (pgs. 3-4); 17d. District administrators said they "assumed" this student was LaLanne's daughter, but that they did not know if that was true and never investigated, even though the photos were serious enough to justify a CPS report. Free Decl., Ex. D (House Testimony) at 37:3-25; Ex. G (Kennedy Testimony) at 15:25-16:9; Ex. H (Stone Testimony) at 27:21-28:11.
[38] Free Decl., Ex. B (Maki Testimony) at 57:18-58:2; Ex. H (Stone Testimony) at 31:7-16.
[39] Trial Ex. 73 (pg. 1).
[40] Free Decl., Ex. B (Maki Testimony) at 28:19-29:1; 48:6-14; 58:11-17; Ex. D (House Testimony) at 26:8-23; Ex. E (Steedman Testimony) at 78:3-12; Ex. G (Kennedy Testimony) )at 56:4-58:17; Ex. F (Kennedy Testimony) at 169:15-170:10; Ex. H (Stone Testimony) at 13:6-18, 14:8-15, 32:21-33:4, 40:12-17; Trial Exs. 13; 14; 16; 102.

PLAINTIFF'S CR 59(a) MOTION
(3:19-CV-05901-RJB)

6

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

students working with LaLanne were displaying signs of sexual abuse: oversexualized behavior.[41] This included "molesting" other students, targeting girls, engaging in "very adult-like masturbation,"[42] knocking children down,[43] being "predatory,"[44] and displaying other concerning conduct.[45] She also reported the students' over-sexualized behavior to Child Protective Services ("CPS") for possible abuse.[46]

Given the District's knowledge of child abuse and grooming patterns, a reasonable juror could have found that the District understood Maki to be reporting possible grooming or sexual misconduct. According to Assistant Superintendent Steedman, administrators know that ten percent of students are targeted by educators for sexual abuse.[47] According to former HR Director Denise Kennedy, District educators are trained that oversexualization is a common indicator that students are being sexually abused at school.[48] And they are trained that repeated boundary violations are a sign of grooming or abusive behavior.[49]

Indeed, with all inferences drawn in Maki's favor, the evidence shows the District *did* understand the seriousness of Maki's reports. According to Ms. Kennedy, Maki described the para's conduct in strong language, indicating LaLanne's conduct towards students was "sick."[50] And Principal Stone's text describing the paraeducator's conduct with "Yuk!", showing that she understood the seriousness.[51] Moreover, based on Maki's reports, BSD's own attorney

---

[41] Trial Exs. 73; 14 (pgs. 2, 7, 8); 16 (pgs. 1-2); Free Decl., Ex. E (Steedman Testimony) at 67:8-22, 145:10-146:15; Ex. G (Kennedy Testimony) at 2:17-4:8, 40:8-41:13.
[42] Trial Ex. 73 (pg. 3-4); Free Decl., Ex. G (Kennedy Testimony) at 3:7-4:4.
[43] Trial Ex. 14 (pg. 7).
[44] Trial Exs. 14 (pg. 7); 16 (pg. 1); 73 (pg. 3); Free Decl., Ex. G (Kennedy Testimony) at 3:7-4:4.
[45] Trial Ex. 14 (pg. 7); Free Decl., Ex. H (Stone Testimony) at 31:7-9.
[46] Free Decl., Ex. B (Maki Testimony) at 56:10-57:4
[47] Free Decl., Ex. E (Steedman Testimony) at 58:16-19.
[48] Free Decl., Ex. G (Kennedy Testimony) at 5:23-6:18
[49] Free Decl., Ex. B (Maki Testimony) at 11:6-12:24; Ex. G (Kennedy Testimony) at 15:25-16:6, 18:1-4; Ex. H (Stone Testimony) at 9:3-22; Ex. E (Steedman Testimony) at 57:12-22.
[50] Trial Ex. 73 (pg. 1); Free Decl., Ex. G (Kennedy Testimony) at 2:17-3:6.
[51] Trial Ex. 15.

PLAINTIFF'S CR 59(a) MOTION
(3:19-CV-05901-RJB)

7

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

recommended reporting LaLanne to CPS for possible child abuse or neglect.[52] As detailed by Ms. Kennedy, administrators must report to CPS where there is "reasonable cause" to believe a "child suffered abuse or neglect."[53] In other words, *in the light most favorable to Plaintiff, the District's own attorney determined there was reasonable cause to believe the paraeducator was abusing a student* based on conduct that Mrs. Maki reported.

Finally, expert Judith Billings, the former Superintendent of Washington Public Schools, testified that, in her opinion, Maki properly reported her reasonable suspicion that LaLanne was engaged in sexual grooming.[54] Drawing all inferences from Ms. Billing's testimony in Maki's favor, Maki adequately and properly communicated her grooming concerns to the District.

And, in any event, **Maki used the "magic words" by Spring 2017**. Maki testified that at that time she told Principal Stone that she believed LaLanne was a "sexual predator" towards students.[55] In other words, only weeks before Stone's retaliation, Maki expressly reported that the paraeducator was a possible sexual predator.

### 2. A Reasonable Juror Could Have Found the District Subjected Mrs. Maki to an Adverse Action.

The Court ruled that a reasonable juror could not have found an adverse employment action.[56] This is simply wrong. In a retaliation case, an adverse employment action is any action that "well might have" or "would" have dissuaded a reasonable employee from making or supporting any charge of discrimination.[57] This is a much lower standard than in a

---

[52] Trial Ex. 16 (pg. 3); Free Decl., Ex. G (Kennedy Testimony) at 12:12-13:19; Ex. E (Steedman Testimony) at 146:18-147:1.
[53] Free Decl., Ex. G (Kennedy Testimony) at 12:24-13:6.
[54] Free Decl., Ex. J (Billings Testimony) at 13:9-25.
[55] Free Decl., Ex. C (Maki Testimony) at 68:4-8; Ex. B (Maki Testimony) at 58:18-59:12, 50:11-52:9
[56] Free Decl., Ex. A (Oral Ruling) at 5:7-12.
[57] *Boyd v. State, Dep't of Soc. & Health Servs.*, 187 Wn. App. 1, 15, 349 P.3d 864 (2015).

PLAINTIFF'S CR 59(a) MOTION
(3:19-CV-05901-RJB)

8

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

discrimination case, which requires that an adverse action be "material."[58] An adverse action can be a single action.[59] Or it can be a series of adverse actions that *"taken together"* had the potential to dissuade a reasonable person in Mrs. Maki's position from opposing sexual grooming.[60] Co-worker retaliation is also actionable where, as the evidence showed here, the employer has constructive knowledge of the co-worker's retaliation, tolerates the retaliation, and the retaliation well might dissuade a reasonable worker from reporting discrimination.[61]

At trial, Maki presented evidence of a wealth of adverse actions by Principal Stone. This includes, without limitation: (1) subjecting her to increased employment scrutiny, criticizing her performance, threatening her with a negative review, and withdrawing support;[62] (2) ordering Maki to isolate alone in a room with a student known to repeatedly attack and injure teachers, even though this created an "unnecessary risk of harm" for Maki according to expert Judith Billings;[63] (3) applying a device to Maki's classroom door that trapped and confined Maki inside the classroom with that student, even though Principal Stone knew that this would likely cause the student to attack Maki;[64] (4) abandoning Maki with that violent student despite the almost certain likelihood Maki would be attacked;[65] (5) refusing to provide legally required 1:1 paraeducator support for that student, which resulted in him attacking Maki over many

---

[58] *Compare, e.g.,* WPI 330.06 (defining adverse employment action in retaliation context); *with* WPI 330.01.02 (defining adverse employment action in disparate treatment context).
[59] *Boyd*, 187 Wn.App. at 14.
[60] *Id.,* 14, 15.
[61] *See* Dkt. 171, pgs. 17-18 (citing and discussing authorities); *see also Fielder v. UAL Corp.*, 218 F.3d 973, 985 (9th Cir. 2000), *vacated on other grounds*, 536 U.S. 919 (2002) (in retaliation claim, co-worker retaliation that rises to the level of an adverse employment action is actionable).
[62] Free Decl., Ex. B (Maki Testimony) at 45:11-23, 53:10-16, 59:13-25, 60:24-61:14.
[63] *See* Free Decl., Ex. H (Stone Testimony) at 56:6-13, 60:21-62:13, 62:16-64:13, 66:16-17; Ex. B (Maki Testimony) at 62:16-63:22, 65:14-66:23, 71:3-72:2, 73:1-4, 73:19-74:1, 74:5-8, 87:6-10, 90:3-9, 93:3-94:4; Ex. C (Maki Testimony) at 47:12-22, 55:12-18, 98:10-100:4; Ex. J (Billings Testimony) at 24:25-25:14; Ex. K (Sullivan-Dudzic Testimony) at 43:22-44:21, 48:22-49:3; Trial Exs. 9 (pg. 6); 61.
[64] *See* Trial Exs. A-18; 58b (pgs. 2-3); Free Decl., Ex. H (Stone Testimony) at 73:14-21, 84:11-13; Ex. B (Maki Testimony) at 80:2-7, 82:7-23; Ex. C (Maki Testimony) at 44:18-25, 55:21-22; Ex. K (Sullivan-Dudzic Testimony) at 49:11-16.
[65] *See* Trial Ex. 66; Free Decl., Ex. H (Stone Testimony) at 85:4-87:24; Ex. B (Maki Testimony) at 83:11-84:11, 87:2-88:11, 91:12-18.

PLAINTIFF'S CR 59(a) MOTION
(3:19-CV-05901-RJB)

9

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

weeks and becoming "significantly" more "violent" and "dangerous;"[66] and (6) placing Maki in an unsafe situation with that student, resulting in her being repeatedly attacked.[67] Maki also presented evidence that Principal Stone and other District employees tolerated the paraeducator's blatant retaliation, even though the District knew the paraeducator had created an unsafe workplace for Maki and was bullying and undermining Maki.[68] Whether "taken together" or independently, these actions and others described by witnesses and documents "well might have" dissuaded a reasonable teacher from opposing the para's conduct.

### 3. A Reasonable Juror Could Have Found Maki's Protected Activity Caused Adverse Employment Actions.

Under Washington law, Maki need only show her protected activity was a substantial factor in causing the adverse action. WPI 330.01.01. A substantial factor does not mean Maki's protected activity was the "only factor" or even the "main factor." WPI 330.01.01. The issue of causation *must* go to the jury if a reasonable juror could find: (1) the employee engaged in statutorily protected activity; (2) the employer had knowledge of the action; and (3) the employee was subjected to an adverse employment action. *Cornwell*, 192 Wn.2d at 413. Here, a reasonable juror could have found each of these elements for the reasons discussed above.

The conclusion that causation needed to go to the jury is crystallized by the fact that—drawing all inferences in Maki's favor—a reasonable juror could have found that Maki's reports caused Principal Stone to subject Maki to the above-described adverse actions, including

---

[66] *See* Free Decl., Ex. B (Maki Testimony) at 61:15-63:9, 64:4-65:12, 67:20-68:8, 93:21-94:2, 99:16-24, 102:5-13; Ex. C (Maki Testimony) at 20:1-13; Ex. J (Billings Testimony) at 18:16-19:5; Trial Exs. 61; 20 (pg. 9).
[67] *Supra* at fn. 56-58.
[68] *See* Free Decl., Ex. B (Maki Testimony) at 22:7-11, 24:18-25:21, 39:19-40:2, 40:3-41:20, 44:25-45:10, 45:11-23, 42:5-43:7, 43:24-44:24, 59:13-25; Ex. H (Stone Testimony) at 10:18-11:13, 33:19-34:1; Ex. D (House Testimony) at 26:8-23, 34:13-23, 35:18-23; Ex. E (Steedman Testimony) at 76:18-21, 78:3-8; Trial Exs. 17b (pgs. 1-2, 4); 18; 110.

PLAINTIFF'S CR 59(a) MOTION
(3:19-CV-05901-RJB)                                10

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

isolating her alone in an unsafe environment with a known violent student. In Spring 2017, the District threatened Principal Stone's job because of how she mismanaged Maki's reports regarding the paraeducator.[69] Right around the same time, Maki reported that the para was a "sexual predator."[70] Then, only a short number of workdays later,[71] Stone refused to provide a 1:1 paraeducator and isolated Maki alone with that uncontrollably violent student.[72] This temporal connection alone raises a reasonable inference of retaliation under State Supreme Court authority.[73] And a reasonable juror could have found that Stone getting in trouble over Maki's reports was a substantial factor in her ignoring Maki's repeated workplace safety complaints and subjecting Maki to an unsafe work environment.

Moreover, because Steedman was dismissive towards Maki's reports and concerns,[74] a reasonable jury could have found that her reports annoyed District administrators. Indeed, only weeks after the District opened an investigation into LaLanne, Maki emailed Steedman and reported "retaliation" against her because of her reports.[75] But Steedman refused to take any action.[76] Instead, over the following months, Steedman, District administrators, and Principal Stone repeatedly tolerated the para's and her allies' blatant retaliation.[77] And they consistently allowed the para to remain in Maki's classroom, where she continued retaliating.[78] From this, drawing all inferences in Maki's favor, a jury could have concluded Maki's reports

---

[69] Free Decl., Ex. B (Maki Testimony) at 49:7-50:10, 50:11-51:20, 60:9-14.
[70] *Id.,* 58:18-59:12, 50:11-52:2.
[71] Due to summer break between the 2016-17 and 2017-18 school year.
[72] Supra.
[73] *See Cornwell*, 192 Wn.2d at 416 n.10 ("The time between those events is a few months—brief enough to give rise to a reasonable inference of retaliatory motive").
[74] Free Decl., Ex. E (Steedman Testimony) at 146:18-147:16; Ex. G (Kennedy Testimony) at 6:19-7:12, 18:22-20:17; Trial Ex. 15.
[75] Trial Ex. 107; Free Decl., Ex. E (Steedman Testimony) at 73:2-74:20.
[76] *Id.*
[77] *See* Trial Exs. 73 (pg. 2); 16 (pg. 3); 17d (pg. 3); 102; Free Decl., Ex. G (Kennedy Testimony) at 24:7-13, 50:9-16; Ex. E (Steedman Testimony) at 62:19-25, 63:21-24, 75:13-76:17; Ex. D (House Testimony) at 40:3-25; Ex. K (Sullivan-Dudzic Testimony) at 15:21-16:17.
[78] *See* Free Decl., Ex. G (Kennedy Testimony) at 54:19-55:6; Ex. E (Steedman Testimony) at 78:18-79:4.

PLAINTIFF'S CR 59(a) MOTION
(3:19-CV-05901-RJB)

11

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

were a substantial factor in the District tolerating the paraeducator's blatant retaliation.

C.  **The Court Committed Reversible Error When it Allowed the District to Read "Dani Palomino's" "Statements" into the Record.**

The Court must only permit the jury to view inadmissible evidence that an expert relied on where it is substantially more probative than prejudicial. FRE 703. But during the testimony of Plaintiff's expert, Ms. Billings, the Court allowed the District to read highly prejudicial (purported) interview notes that Ms. Billings reviewed into the record.[79] Those notes purported to contain statements by former District paraeducator Dani Palomino, but because she did not testify or submit an affidavit, it is unknown who made those statements, if anyone.[80]

The highly prejudicial "notes" suggested that Maki could have escaped the room any time on the 26th because she possessed keys.[81] The letter also suggested that Mrs. Maki consented to being in the room with GC while the firehose was on the door and asked Palomino to place the hose on the door.[82] Despite containing unduly prejudicial hearsay, the Court overruled Plaintiff's repeated objections and refused to issue a limiting instruction advising that these statements were not admissible for truth.[83] Emboldened, the District again read this letter verbatim during closing arguments. Again, the Court overruled Plaintiff's objections and allowed the District to poison the jury with unverified statements not subject to cross-examination or proof of personal knowledge.

Here, allowing the defense to read the unsworn notes verbatim was far more damaging than allowed by ER 703. Indeed, it was substantially more prejudicial than probative and thus needed to be excluded under ER 403 and 703. And the jury found that Maki did not

---

[79] Free Decl., Ex. L; Ex. J (Billings Testimony) at 64:21-71:5.
[80] *Id.*, 65:19-20.
[81] *Id.*, 67:18; Ex. L (pg. 1).
[82] *Id.*; Ex. J (Billings Testimony) at 67:25-68:21.
[83] *Id.*, 64:21-71:5, 67:9-13, 68:5-9, 69:19-23, 71:7-13.

prove her Section 1983 claim and was contributorily negligent. This suggests that the Court's refusal to issue a limiting instruction was not harmless. It was manifest error.[84] Accordingly, the Court should order a new trial on all of Maki's claims.

## V. CONCLUSION

The Court committed reversible error as detailed above. It failed to consider key evidence. It misstated Washington law. And it reached an erroneous decision based on "manifest errors of law." It should correct its error and order a new trial on all claims *after* the certification process has been completed through the Washington State Supreme Court.

RESPECTFULLY SUBMITTED this 19th day of August 2021.

BLOOM LAW PLLC

By: _/s/ Jay Corker Free_
By: _/s/ Beth Bloom_
Beth Bloom WSBA #31702
Jay Corker Free, WSBA #51393
3827C South Edmunds Street
Seattle, Washington 98118
Telephone: (206) 323-0409
E-mail:  bbloom@bloomlawpllc.com
jfree@bloomlawpllc.com

A BOE LAW FIRM PS

By: _/s/ Deborah A. Boe_
Deborah A. Boe, WSBA #39365
5600 Kitsap Way
Bremerton, Washington 98312
Telephone: (360) 692-1133
E-mail: Deborah.boelawfirm@gmail.com

*Attorneys for Plaintiff Wendy A. Maki*

GALLAGHER LAW OFFICE PS

By: _/s/ Daniel C. Gallagher_
Daniel C. Gallagher, WSBA #21940
10611 Battle Point Drive NE
Bainbridge Island, Washington 98110-1493
Telephone: (206) 855-9310
Facsimile: (206) 462-1557
E-mail: dan@nwprolaw.com

---

[84] *See, e.g., State v. Redmond*, 150 Wn. 2d 489, 496 (2003) (reversible error to fail to give limiting instruction).

PLAINTIFF'S CR 59(a) MOTION
(3:19-CV-05901-RJB)

13

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409

CERTIFICATE OF SERVICE

I, Dan Gallagher certify and state as follows:

1. I am a citizen of the United States and a resident of the state of Washington; I am over the age of 18 years and not a party of the within entitled cause. I am employed by the law firm of Gallagher Law Office, whose address is 10611 Battle Point Drive NE, Bainbridge Island, Washington 98110.

2. I caused the foregoing document to be served upon counsel of record at the address and in the manner described below, on August 19, 2021.

| | |
|---|---|
| Francis S. Floyd #10642<br>ffloyd@floyd-ringer.com | [ ] U.S. Mail |
| Danielle P. Smith, WSBA # 49165<br>dsmith@floyd-ringer.com | [ ] ABC Legal Messenger |
| | [ ] Facsimile |
| FLOYD, PFLUEGER & RINGER, P.S.<br>200 W. Thomas St., Ste. 500<br>Seattle, WA 98119<br>Telephone: (206) 441-4455<br>Facsimile:  (206) 441-8484 | [ ] E-Mail |
| | [X] Via CM/ECF |

*Attorneys for Defendants*

I hereby declare under the penalty of perjury of the laws of the State of Washington that the foregoing is true and correct.

DATED on this 19th day of August, 2021.

 /s/ Daniel C. Gallagher, WSBA #21940 
Daniel C. Gallagher, WSBA #21940

PLAINTIFF'S CR 59(a) MOTION
(3:19-CV-05901-RJB)

14

BLOOM LAW PLLC
3827C South Edmunds Street
Seattle, Washington 98118
(206) 323-0409